PROVIDENT TRUST CO. v. UNITED STATES.

No. L–53.

Court of Claims.

Feb. 6, 1933.

Allen H. Gardner and George M. Morris, both of Washington, D. C. (Joseph Carson and Charles C. Perkins, both of Philadelphia, Pa., and KixMiller, Baar & Morris, of Washington, D. C., on the brief), for plaintiff.

Fred K. Dyar, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

474

GREEN, Judge.

Plaintiff brings this suit to recover $24,-939.33 with interest, being the amount overpaid as alleged in the petition upon taxes assessed against the estate of George Theodore Roberts, deceased, of which the plaintiff is administrator. The facts in the case are undisputed. The deceased left a will under which his daughter, Elizabeth Wentworth Roberts, was made residuary-legatee; the bequest to her, however, being made in trust to the plaintiff to pay the net income to her during the term of her natural life and upon her death to her lawful issue, or, in event she died without issue, to certain charitable institutions named in the will. It is sufficient without repeating the other matters shown in the findings to say that under the issues and facts in the case the counsel for the respective parties agree that there is but one question for the determination of the court, and that is whether evidence can be admitted to show that at the time of the decease of the testator his daughter was incapable of having issue, and if so whether the presumption to the contrary has been overcome. The defendant contends that the testimony offered by the plaintiff on this point should be excluded.

A large number of authorities have been called to the attention of the court by both parties, but in order to properly determine their application it will be necessary to consider the fundamental rules of evidence. Mr. Wigmore, in his monumental work on Evidence, lays down the rule (volume I, § 10) that: "All facts having rational probative value are admissible, unless some specific rule forbids." In section 11 following he states that: " * * * the rules of admissibility may be grouped under three heads, the first dealing with the probative value of specific facts, the second including artificial rules which do not profess to define probative value but yet aim at increasing or safeguarding it, and the third covering all those rules which rest on extrinsic policies irrespective of probative value."

The third group of rules, he says, "invokes, for the exclusion of certain kinds of facts, extrinsic policies which override the policy of ascertaining the truth by all available means." It is plain that if the evidence now under consideration is to be excluded, it must be done under this third group of rules, for we think there can be no question as to its having a probative value. The testimony which has been introduced establishes a state of facts from which, as we think, no reason-able person can draw but one conclusion. If it is excluded, it must be, as further stated by Mr. Wigmore, "because its admission would injure some other cause more than it would help the cause of truth, and because the avoidance of that injury is considered of more consequence than the possible harm to the cause of truth." As Wigmore further shows, most of these rules excluding evidence consist in giving certain persons an "option," i. e., "a privilege to withhold the evidential fact."

With these fundamental principles in mind, we proceed to an examination of the decisions cited on behalf of the defendant. In the greater number of the cases cited it would appear that evidence of the character which plaintiff asks to be received was held to be inadmissible for various reasons which are not applicable to the facts now under consideration, or at least not applicable to the issues joined herein. In most of the cases which hold that evidence of this nature should be rejected, it was held that there was a presumption that the person to whom such testimony or evidence referred was capable of having issue, and in some of these cases this presumption was held to be a conclusive one, but this latter holding, as it seems to us, is not based on any good reason. At least no reason is given which would conform to the rule stated by Mr. Wigmore, as we shall show later on. In some cases it was said that such evidence ought not to be received when it affected the devolution of estates. Conceding for the sake of the argument that this is the correct rule, we think it has no application here, as the devolution of the estate must in any event be determined by the circumstances existing at the time of the death of the residuary legatee, and be proved by altogether different evidence. In one case the somewhat surprising statement was made that the delicacy of the matter prevented such evidence from being considered, but the courts are every day considering evidence which would much more be subject to this kind of an objection. In another case it was held that the consequences of admitting evidence of this character were too serious. As to this last point it may be said that the consequences of testimony being received are usually serious with reference to one party or the other, but they are most serious in criminal cases where the life of the defendant may be involved and where the ability of the government to enforce its laws and protect its citizens is always affected.

The rules of extrinsic policy which may exclude evidence regardless of its probative

force are either absolute or conditional. In the case at bar counsel for defendant claims that the rule is absolute. Again consulting Wigmore (section 2180), we find that the rules of absolute exclusion include matter that involves indecency, or impropriety (such as testimony given by a judge, counsel, or juror); inconvenience (public records), or illegality, which may in certain instances be determined by legislative action. It would seem to be clear that the testimony which is now offered does not come under the head of any of the matters referred to above.

What harm or injurious effect can result from receiving the testimony offered in this case? None has been called to our attention and we do not perceive any. In some of the cases cited the testimony was said to be doubtful, conjectural, or unsatisfactory in its nature, and when the particular testimony offered in those cases is considered it may be conceded that there was reason for its rejection. But the testimony offered in the case at bar is not of that nature. It is positive, direct, and conclusive, of a nature that would satisfy ordinarily prudent men in acting upon it in matters of the highest importance, and we do not think it should be rejected.

The cases cited on behalf of defendant exceed in number those relied upon by plaintiff; but, as we have already shown, only those decisions cited by defendant which make the presumption conclusive are directly in point and these cases are few in number. Moreover, the courts are more and more turning away from old precedents which without good reason prevent the real facts from being shown. To hold otherwise is to deny a litigant relief no matter what may be the merits of his case.

Having determined that the testimony under consideration is admissible, we have deduced therefrom the ultimate fact that at the time of the death of the testator his daughter was incapable of having issue. (See fifth paragraph of the findings.) From this finding it follows that the residue of the estate bequeathed to the decedent's daughter would pass at her death to the charities named in his will. The parties have stipulated in effect that in such event the value thereof at the time of the testator's death should have been deducted from the value of the gross estate in determining the amount of tax to be paid on the net amount subject to taxation. Determined on the basis of the life expectancy of the life tenant with a discount for reducing the reversion to present worth, the value of the interest passing to these charities at the death of the testator has been found to be $313,236.76. Using these figures, the computation of the tax presents no difficulty, and it is merely a matter of subtraction from the amount of the tax paid to ascertain the sum to be refunded to plaintiff. But in addition to this the interest on the refund will be computed, and this raises a controverted question under the law of 1932 which has not yet been definitely settled by the courts and upon which counsel have favored us with no argument nor even suggestion.

A conclusion of law will be entered holding that plaintiff is entitled to judgment, which will be withheld pending a submission by the respective parties of a calculation of the amount of refund, including interest, due the plaintiff in accordance with this opinion, together with such argument as they may see fit to submit with reference to the manner in which this interest should be computed. It is so ordered.

BOOTH, Chief Justice, took no part in the decision of this case on account of illness.