UNITED STATES *v.* PROVIDENT TRUST CO., ADMINISTRATOR.

No. 224. Argued January 11, 12, 1934.—Decided February 5, 1934.

*Solicitor General Biggs,* with whom *Assistant Attorney General Wideman* and *Mr. Paul A. Sweeney* were on the brief, for the United States.

274

*Mr. Joseph Carson,* with whom *Mr. George M. Morris* was on the brief, for respondent.

278

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The Provident Trust Company is the administrator, with will annexed, of the estate of the deceased, who died in 1921, leaving a will thereafter duly admitted to probate. Subsequent to the filing of the federal estate tax return, the Commissioner of Internal Revenue imposed an additional estate tax, amounting with interest to something over $21,000. The trust company paid the amount and filed a claim for refund of $18,404.05, on the ground

that under the provisions of the will the value of the residuary estate, less the value of the life estate of the daughter of deceased, should have been but was not allowed as a deduction from the gross estate. The commissioner rejected the claim and this action was brought.

The will, after making certain bequests, devised the remainder of the estate to the trust company, in trust to pay the income thereof to deceased's daughter during her natural life, and upon her death to her lawful issue; and further provided that upon the death of the daughter without issue, the testator's residuary estate should be distributed among designated charitable institutions and societies—all belonging to that class of organizations, bequests to which are deductible from the gross estate under the provisions of § 403 (a) (3) of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1098. At the time of deceased's death, the daughter was fifty years of age. She had been in poor health and under a physician's care; and on February 9, 1914, upon medical advice, an operation was performed removing her uterus, Fallopian tubes, and both ovaries. The court below specifically found—"The operation and removal of the organs were necessary to prevent further impairment of her health. After the operation she could not have become pregnant nor could she have given birth to a child. She died on March 12, 1927, unmarried, and without ever having given birth to a child." Following her death, a state orphans' court awarded the residue of the estate, subject to payment of transfer or inheritance taxes which might be due, to the charitable organizations named in the will.

Upon the foregoing facts, the court below held that respondent was entitled to recover, and accordingly awarded judgment in the sum of $17,204.66. 77 Ct. Cls. 37; 2 F.Supp. 472.

Section 403 (a) (3), *supra,* so far as it is pertinent here, provides that for the purpose of determining the value of the net estate to be taxed there shall be deducted from the value of the gross estate—" (3) The amount of all bequests, . . . to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, . . . ." Article 53, Treasury Regulations 37, declares that the amount of the deduction in such case is the value at the date of decedent's death of the remainder interest in the money or property which is devised or bequeathed to charity. Compare *Ithaca Trust Co.* v. *United States,* 279 U.S. 151. It follows that in making a deduction for that interest, the value thereof must be determined from data available at the time of the death of decedent. Compare *Humes* v. *United States,* 276 U.S. 487, 494.

The government contended in the court below, as it contends here, that, in view of the restriction in respect of issue contained in the will, the value could not be thus determined, since the law, without regard to the fact, conclusively presumes that a woman is capable of bearing children as long as she lives; and that this presumption controls where the organs of reproduction have been completely removed and inability to bear children admits of no valid dispute, no less than where the question turns upon the circumstance of age alone, or upon conflicting evidence or medical opinions. The lower court held otherwise for the reason that the facts established, as of the date of decedent's death, forbade any other conclusion than that the daughter was incapable of bearing children, and a presumption to the contrary could not be indulged.

The rule in respect of irrebuttable presumptions rests upon grounds of expediency or policy so compelling in character as to override the generally fundamental re-

quirement of our system of law that questions of fact must be resolved according to the proof. Mr. Best, writing more than ninety years ago when the force of the rule was more strictly regarded than it has come to be since, said that modern courts of justice (that is to say, the courts of that day) were slow to recognize presumptions as irrebuttable, and were disposed to restrict rather than extend the number.

"Many presumptions," he says, "which, in earlier times, were deemed absolute and irrebuttable, have, by the opinion of later judges, acting on more enlarged experience, either been ranged among, *praesumptiones juris tantùm,* or considered as presumptions of fact, to be made at the discretion of a jury. . . . By an arbitrary rule, to preclude a party from adducing evidence which, if received, would compel a decision in his favour, is an act which can only be justified by the clearest expediency and soundest policy; and it must be confessed that there are several presumptions still retained in this class which never ought to have found their way into it, and which, it is to be feared, often operate seriously to the defeat of justice." Best, Presumptions of Law and Fact (London, 1844), § 18.

Certainly the world has gained in experience since that was written; and the binding effect, in respect of particular situations, of the ancient rule precluding proof of facts to the end of avoiding supposed injurious results thought to be of greater consequence than the predominance of truth over error, still remains a proper subject of judicial inquiry to be made and resolved in the light of such further experience and knowledge. Compare *Funk* v. *United States,* 290 U.S. 371.

The foregoing observations are peculiarly apposite to the phase of the subject now under review; for, as suggested by counsel for respondent, the presumption here

involved had its origin at a time when medical knowledge was meager, and many centuries before the discovery of anaesthetics and, consequently, before surgical operations of the kind here involved became practicable. It was not until a comparatively recent period, therefore, that the effect of such an operation was disclosed to observation, and the incontrovertible fact recognized that a woman subjected thereto was permanently incapable of bearing children.

The government argues that the rule is one of substantive law and evidence to overcome it is inadmissible. Whether in particular instances so-called irrebuttable presumptions are, in a more accurate sense, rules of substantive law rather than true presumptions, is a matter in respect of which a good deal has been said by modern commentators on the law of evidence. 2 Chamberlayne on Evidence, §§ 1086, 1087, 1159, *et seq.;* 5 Wigmore on Evidence, 2d ed., § 2492. Compare *Heiner* v. *Donnan,* 285 U.S. 312, 328–329; 2 Thayer, Evidence, 351–352, 540–541, 545–546. But it is unnecessary to consider that interesting distinction, since, as will appear, the presumption in question in this instance must be dealt with as open to rebuttal and, therefore, in any aspect of the matter, as a true presumption.

The presumption generally has been held to be conclusive when the element of age alone is involved, albeit Lord Coke's view that the law seeth no impossibility of issue, even though both husband and wife be an hundred years old (Coke on Littleton, 551; 2 Blackstone Commentaries 125), if now asserted for the first time, might well be put aside as a rhetorical extravagance. But the presumption, even where age alone is involved, has not been universally upheld as conclusive or applied under all circumstances. It has been followed to a greater extent in this country than in England, though even here

exceptional cases are to be found; [1] and in England such cases are very numerous.[2] It does not seem necessary to review the decisions in either jurisdiction. It is enough to say that the English courts have treated the rule as possessing a considerable degree of flexibility and have refused to give it a conclusive effect in a large number of cases; while the American courts, adhering to a more rigid view, have applied the rule more generally. See extended note, 67 A.L.R. 538, *et seq.*, where the decisions are classified and digested. Few cases have arisen where elements other than, or in addition to, that of age were present, and the conclusive character of the rule in such cases is by no means established. Thus in *Hill* v. *Spencer*, 196 Ill. 65, 70; 63 N.E. 614, the Supreme Court of Illinois held meaningless an allegation that a woman was past the age of childbearing, but was careful to add, " unless more than a mere matter of age is stated in the bill." See *Denver & R. G. Ry.* v. *Harris, supra*, note 1. And speaking generally this court has said, *Lincoln* v. *French*, 105 U.S. 614, 616–617—" But all presumptions as to matters of fact, capable of ocular or tangible proof, such as the execution of a deed, are in their nature disputable. No conclusive character attaches to them. . They may always be rebutted and overthrown."

The basis for the interposition of an irrebuttable presumption is embodied in the general statement of Mr.

---

[1] *Male* v. *Williams*, 48 N.J.Eq. 33, 36; 21 Atl. 854; *Ansonia National Bank* v. *Kunkel*, 105 Conn. 744, 753; 136 Atl. 588; *Moore's Executor* v. *Beauchamp*, 5 Dana (Ky.) 70, 72; *Bacot's Case*, MS. (N.J.), cited in note to *Apgar's Case*, 37 N.J.Eq. 502; *Apgar* v. *Apgar*, 38 N.J.Eq. 549, 552; *Garney* v. *Kain*, 40 W.Va. 758, 811; 23 S.E. 650. And in *Denver & R. G. Ry.* v. *Harris*, 122 U.S. 597, 608, a personal injury case, this court sustained without question the admission of evidence that the injured person had been rendered impotent as a result of the physical injury.

[2] See note to *Apgar's Case, supra*, note 1.

Wigmore, quoted by the court below, that evidence of certain kinds of facts is excluded "because its admission would injure some other cause more than it would help the cause of truth, and because the avoidance of that injury is considered of more consequence than the possible harm to the cause of truth." 1 Wigmore on Evidence, 2d ed., § 11. Relating this obviously correct view to the presumption here invoked, not only do we perceive no grounds of expediency or policy that call for its hard and fast application to a particular physical condition, when ignorance has been supplanted by knowledge so as to put beyond the range of doubt the destructive effect of that condition upon the capacity for childbearing, but we conclude affirmatively that the policy of the statute under review as applied to the case in hand is quite to the contrary.

The important point to be emphasized is that the question arises with respect to a surgical operation, the inevitably destructive effect of which upon the power of procreation is established by tangible and irrefutable proof. Moreover, the case does not involve the rule against perpetuities, the devolution of property, the rights or title of living persons in or to property, or any other situation such as constituted the background of practically all the decisions which have sustained the conclusiveness of the presumption. We have for consideration simply a statutory provision exempting from a prescribed tax the value of all bequests, etc., made to or for the use of charitable organizations and those which are akin, plainly evincing a legislative policy to encourage such bequests. *Edwards* v. *Slocum,* 264 U.S. 61, 63. And, in that view, we well may assume that Congress could not have meant to leave its aim to be diverted by a purely arbitrary presumption, which, whether applicable or not to *sustain* another or different policy, would deny the

truth and *subvert* the policy of this particular legislation. Compare *Humes* v. *United States, supra,* at p. 494.

The sole question to be considered is—What is the value of the interest to be saved from the tax? That is a practical question, not concluded by the presumption invoked but to be determined by ascertaining in terms of money what the property constituting that interest would bring in the market, subject to such uncertainty as ordinarily attaches to such an inquiry. See *Ithaca Trust Co.* v. *United States, supra.* Thus stated, the birth of a child to the daughter of the deceased after his death was so plainly impossible that, as a practical matter, the hazard disappears from the problem. Certainly, in the light of our present accurate knowledge in respect of the subject, if the interest had been offered for sale in the open market during the daughter's lifetime, a suggestion of the possibility of such an event would have been ignored by every intelligent bidder as utterly destitute of reason.

The judgment of the court below is

*Affirmed.*