**ESTATE of Gloria A. LION, Deceased, Morton E. Rome and George L. Clarke, Executors, Petitioners-Appellants,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 14330.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 9, 1970.

Decided Feb. 12, 1971.

Robert P. Mittelman, Baltimore, Md. (Morton E. Rome, George L. Clarke, and Buckmaster, White, Mindel & Clarke, Baltimore, Md., on brief), for petitioners-appellants.

Carolyn R. Just, Atty., Dept. of Justice (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks and Thomas L. Stapleton, Attys., Dept. of Justice, on brief), for respondent-appellee.

Before SOBELOFF, WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

In this appeal we must decide if the taxpayer is entitled to an estate tax credit under 26 U.S.C.A. § 2013 for property previously subjected to estate tax. The credit claimed is for a life estate in a residuary trust created by decedent's husband with whom she died in a common accident. The Commissioner disallowed the credit and the Tax Court sustained him.[1] We think the Tax Court correctly decided the case, and we affirm.

I

The stipulated facts, as found by the Tax Court, may be succinctly stated: On May 12, 1963, Gloria A. Lion and her husband were both killed in an airplane crash near Cairo, United Arab Republic. There were no survivors, and the circumstances were such that there was no sufficient proof to determine the chronology of their deaths. Mr. Lion's will created a marital trust, and a second trust of the rest and residue of his estate. The residuary trust was for the benefit of Mrs. Lion for life, and Mrs. Lion was given a limited noncumulative power to invade the corpus. Mr. Lion's will stated a presumption of his wife's survivorship in the event of simultaneous deaths, or deaths under circumstances making proof of the chronology of their deaths insufficient.[2] The settlement of Mr. Lion's estate and payment of the federal estate tax thereon proceeded on the basis of the presumption and was accepted by the Commissioner. Property passing to Mrs. Lion and others under the residuary trust was taxed to Mr. Lion's estate.

In Mrs. Lion's estate tax return, a tax credit of $121,309.27 was claimed under 26 U.S.C.A. § 2013, based upon the actuarial value of her life estate in the residuary trust created by her husband. Section 2013 provides a credit against

---

1. The opinion in the instant case is reported as Estate of Lion v. Commissioner, 52 T.C. 601 (1970).

2. Mrs. Lion's will contained no comparable provision. Her gifts to her husband were conditioned upon his surviving her for ten days.

estate taxes where the decedent has recently received property in a transfer itself subject to estate tax.[3] This credit accrues even if the transferred property does not in fact pass through the recipient's estate; thus, the transferred property may be merely a life interest.[4] It

is the correctness of the claim which is at issue here.

## II

■ The Commissioner advances two contentions why a credit under § 2013 should not be allowed. The first is that

---

3. The pertinent provisions of 26 U.S.C.A. § 2013 are:

§ 2013. Credit for tax on prior transfers.

(a) *General rule.*—The tax imposed by section 2001 shall be credited with all or a part of the amount of the Federal estate tax paid with respect to the transfer of property (including property passing as a result of the exercise or non-exercise of a power of appointment) to the decedent by or from a person (herein designated as a "transferor") who died within 10 years before, or within 2 years after, the decedent's death. * * *

* * * * *

(d) *Valuation of property transferred.* —The value of property transferred to the decedent shall be the value used for the purpose of determining the Federal estate tax liability of the estate of the transferor * * *

* * * * *

(e) *Property defined.*—For purposes of this section, the term "property" includes any beneficial interest in property, including a general power of appointment (as defined in section 2041).

4. The Treasury Regulations appear in 26 C.F.R. §§ 20.2013–1, et seq. The pertinent portions of the applicable sections are:

§ 20.2013–1. *Credit for tax on prior transfers.*

* * * * *

(a) *In general.* A credit is allowed under section 2013 against the Federal estate tax imposed on the present decedent's estate for Federal estate tax paid on the transfer of property to the present decedent from a transferor who died within ten years before, or within two years after, the present decedent's death. See § 20.2013–5 for definition of the terms "property" and "transfer". There is no requirement that the transferred property be identified in the estate of the present decedent or that the property be in existence at the time of the decedent's death. It is sufficient that the transfer of the property was subjected to Federal estate tax in the estate of the transferor and that the transferor died within the prescribed period of time. The executor

must submit such proof as may be requested by the district director in order to establish the right of the estate to the credit.

* * * * *

§ 20.2013–4. *Valuation of property transferred.*

(a) For purposes of section 2013 and §§ 20.2013–1 and 20.2013–6, the value of the property transferred to the decedent is the value at which such property was included in the transferor's gross estate for the purposes of the Federal estate tax (see sections 2031, 2032, and the regulations thereunder) reduced as indicated in paragraph (b) of this section. If the decedent received a life estate or remainder or other limited interest in property included in the transferor's gross estate, the value of the interest is determined as of the date of the transferor's death on the basis of recognized valuation principles (see especially § 20.2031–7). * *

* * * * *

§ 20.2013–5. *"Property" and "transfer" defined.*

(a) For purposes of section 2013 and §§ 20.2013–1 to 20.2013–6, the term "property" means any beneficial interest in property, including a general power of appointment (as defined in section 2041) over property. Thus, the term does not include an interest in property consisting merely of a bare legal title, such as that of a trustee. Nor does the term include a power of appointment over property which is not a general power of appointment (as defined in section 2041). Examples of property, as described in this paragraph, are annuities, life estates, estates for terms of years, vested or contingent remainders and other future interests.

(b) In order to obtain the credit for tax on prior transfers, there must be a transfer of property described in paragraph (a) of this section by or from the transferor to the decedent. The term "transfer" of property by or from a transferor means any passing of property or an interest in property under circumstances which were such that the property or interest was included in the gross estate of the transferor. * * *

* * * * *

the taxpayer failed to show that there was a "transfer" of a life estate to Mrs. Lion within the meaning of § 2013 since there was no actual proof that she survived her husband. We find it unnecessary to decide whether a "transfer" occurred, because we are satisfied that Mrs. Lion's life estate in the residuary trust created by her husband was valueless, even if we assume that she survived him. We cannot refrain from noting, however, that the Commission is in a peculiarly weak position to urge that we should decide that the life estate in the residuary trust created by Mr. Lion failed to become possessory, even momentarily, since the Commissioner has already acquiesced in the position of Mr. Lion's executors that the marital trust became possessory, by virtue of the presumption of survivorship stated in Mr. Lion's will. The fact is that the Commissioner has collected the tax on the property attributable to Mrs. Lion's estate by virtue of her interest in the marital trust. Nevertheless, assuming but not deciding that Mrs. Lion was vested with a life estate in Mr. Lion's residuary trust moments before her death, we agree that for federal estate tax purposes the interest was valueless so that her estate is not entitled to a credit under § 2013 for property previously taxed.

■ The Commissioner's second argument for disallowing a tax credit here is that the life estate, even if it was transferred to Mrs. Lion, had no value. Under § 2013(b), the amount of the tax credit, subject to limitations in §

2013(c) not relevant here, is to bear the same ratio to the total estate tax paid by the transferor as the value of the transferred property bears to the total value of the transferor's taxable estate.[5] Thus, if the transferred property is worth nothing, the tax credit is zero.

The Tax Court held that the life estate was valueless at the time of the transfer, reasoning that on the facts available at the time of Mr. Lion's death a hypothetical buyer would have paid nothing for Mr. Lion's life interest because Mr. and Mrs. Lion were "hurtling to their deaths in the same airline crash." Taxpayer contends that the value of the estate should be determined, not by the special circumstances at the time of Mr. Lion's death, but by standard mortality tables established by regulations of the Commissioner, see particularly § 20.2013–4.

Section 2013(d) states generally that the value of the property transferred to the decedent shall be the value used for the purpose of determining the federal estate tax liability of the estate of the transferor. Since § 2013 also extends the credit to transfers of beneficial interests in property, one must look to the regulations to determine the value of property received by a decedent when the decedent received something less than the fee and the fee was taxed to the estate of the transferor. Section 20.2013–4 of the regulations deals with this problem, and it states: "If the decedent received a life estate or remainder or other limited interest in property included in the transferor's

5. 26 U.S.C.A. § 2013(b) reads as follows:
(b) *Computation of credit.*—Subject to the limitation prescribed in subsection (c), *the credit provided by this section shall be an amount which bears the same ratio to the estate tax paid* (adjusted as indicated hereinafter) *with respect to the estate of the transferor as the value of the property transferred bears to the taxable estate of the transferor* (determined for purposes of the estate tax) decreased by any death taxes paid with respect to such estate and increased by the exemption provided for by section 2052 or section 2106(a)(3), or the corresponding

provisions of prior laws, in determining the taxable estate of the transferor for purposes of the estate tax. For purposes of the preceding sentence, the estate tax paid shall be the Federal estate tax paid increased by any credits allowed against such estate tax under section 2012, or corresponding provisions of prior laws, on account of gift tax, and for any credits allowed against such estate tax under this section on account of prior transfers where the transferor acquired property from a person who died within 10 years before the death of the decedent. (emphasis supplied.)

gross estate, the value of the interest is determined *as of the date of the transferor's death on the basis of recognized valuation principles (see especially § 20.-2031–7)."* (emphasis supplied.) Section 20.2031–7 of the regulations promulgates tables of ages with corresponding factors to compute the present value of annuities, life estates, terms for years, remainders and reversions and also adopts, by reference, other life and actuarial tables which apply to certain special situations.

While the regulations indicate that *ordinarily* the value of a life estate is to be determined by the use of actuarial tables, the use of tables is subject to the underlying premise that what is sought to be achieved is value "as of the date of the transferor's death on the basis of recognized valuation principles." That the tables may or may not reflect "recognized valuation principles" is implicit in the use of the phrase "see *especially* § 20.2031–7" (emphasis added), rather than an imperative phrase, for example, "as determined by § 20.2031–7," or an expression of like import. The regulations thus leave room for departure from strict application of the tables.

Departure from mortality tables because of unusual circumstances has been consistently allowed in cases involving the determination of the size of charitable remainders for purposes of the charitable deduction from the estate tax. The seminal case in this area, Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929), is relied on by taxpayers here because it was one in which actuarial tables were employed. The estate in question included a trust with a life estate to the testator's wife, coupled with a power to invade the corpus, and remainder to charity. The testator's widow died six months after him, and the contention was advanced that the value of the charitable remainder, deductible for estate tax purposes, should be what it was at the widow's death rather than what would have been predictable by the use of mortality tables at the time of the testator's death.

The Court, per Justice Holmes, rejected this argument, and concluded that the charitable remainder must be valued as of the date of the testator's death. The Court stated that value "as the word is used by the law * * * depends largely on more or less certain prophecies of the future, and the value is no less real at that time if later the prophecy turns out false than when it comes out true." 279 U.S. at 155, 49 S.Ct. at 292. This case is quite unlike to one in which the life tenant's death was certain to be imminent at the time of the testator's death.

The next Supreme Court case in this area was United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793 (1934). There, the testator had established a trust in which his daughter had a life estate, with remainder to her lawful issue and contingent remainders, should she die without issue, to designated charitable institutions. At the date of the testator's death, the daughter was age 50, without issue, unmarried and had had her reproductive organs surgically removed. There was no medical possibility that she could ever bear a child. The government argued that since the value of the charitable contingent remainder could not be established, the deduction should be disallowed. The right to the charitable deduction was sustained, however, notwithstanding the well-established presumption, on which the government relied, that a woman is capable of bearing children as long as she lives. The following language of the Court is the nub of the decision:

The sole question to be considered is, What is the value of the interest to be saved from the tax? That is a practical question, not concluded by the presumption invoked, but to be determined by ascertaining in terms of money what the property constituting that interest would bring in the market, subject to such uncertainty as ordinarily attaches to such an inquiry. See Ithaca Trust Co. v. United States, [279 U.S. 151, 49 S.Ct. 291, 73 L.Ed.

647,] supra. Thus stated, the birth of a child to the daughter of the deceased after his death was so plainly impossible that, as a practical matter, the hazard disappears from the problem. Certainly, in the light of our present accurate knowledge in respect of the subject, if the interest had been offered for sale in the open market during the daughter's lifetime, a suggestion of the possibility of such an event would have been ignored by every intelligent bidder as utterly destitute of reason.

291 U.S. at 286, 54 S.Ct. at 392.

Subsequent decisions of the Tax Court depart from strict application of actuarial tables where there is reasonable certainty that use of the tables would violate reason and fact. Estate of Jennings v. Commissioner, 10 T.C. 323 (1948), is a good example. There, a charitable remainder was subject to a life estate and to the trustee's broad power to invade principal for the care and maintenance of the life tenant. Although the Commissioner argued that the charitable remainder was incapable of valuation because the life tenant's maintenance and medical expenses far exceeded the income of the trust, the deduction for a charitable gift was allowed because it was shown that the life tenant was seventy-three, in a very precarious state of health, and had a life expectancy of not more than one year. In fact, his death followed that of the testatrix by two months. Specifically, the court approved departure from mortality tables when "the proven facts show a less life expectancy." 10 T.C. at 328. To the same effect are Huntington National Bank v. Commissioner, 13 T.C. 760 (1949); Estate of Butler v. Commissioner, 18 T.C. 914 (1952); and Estate of Hoelzel v. Commissioner, 28 T.C. 384 (1957). See also Commissioner v. Sternberger, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955), in which the Court denied any deduction for a charitable bequest of a contingent remainder, notwithstanding a clear legislative direction to allow deductions for charitable gifts,

because of the unlikelihood that the remainder would even vest.

Taxpayers rely on another line of cases involving the value of life insurance policies owned by decedents who were killed in common accidents with their insureds under circumstances where proof of order of death was unavailable. Old Kent Bank and Trust Co. v. United States, 292 F.Supp. 48 (W.D.Mich. 1968), reversed in 430 F.2d 392 (6 Cir. 1970); Estate of Chown v. Commissioner, 51 T.C. 140 (1968), reversed in 428 F.2d 1395 (9 Cir. 1970); Estate of Wien v. Commissioner, 51 T.C. 287 (1968), appeal pending to the Fifth Circuit. In these cases statutory presumptions established that the insureds were to be treated as having survived; the issue in each case was whether the value of the policy held by the deceased owner was to be treated as inflated by the imminent death of the insured. In *Old Kent,* the district court held that the value of the policy was zero; in *Chown* and *Wien,* the Tax Court held that the value was the face amount. The Sixth and Ninth Circuits reversed in *Old Kent* and *Chown,* holding that the value was "the interpolated terminal reserve," with certain adjustments. We express no view on the conflict between the Tax Court and the Sixth and Ninth Circuits. There will be time enough to decide the question when we reach and decide Estate of Meltzer v. Commissioner, No. 15,015, now pending before us on appeal from the Tax Court. See P.H.Memo.T. C. § 70,062.

But what distinguishes these cases from the instant case is the measure of value established by the Commissioner's regulations. The regulation for fixing the value of a life estate for purposes of a tax credit is to apply "recognized valuation principles" and these may be, but not necessarily are, to employ actuarial and mortality tables. By contrast, the regulations for valuation of an insurance policy on the life of another direct that that value "is established through the sale by that company of comparable contracts" (Regulation § 20.2031–8(a)

(1) ) and then recognize that "[a]s valuation of an insurance policy through sale of comparable contracts is not readily ascertainable when, at the date of decedent's death, the contract has been in force for some time and further premium payments are to be made," resort should be had to the interpolated terminal reserve with certain adjustments. (Regulation § 20.2031–8(a) (2) ). The only exception is the statement that if "because of the unusual nature of the contract" the interpolated terminal reserve method "is not reasonably close to the full value of the contract, this method may not be used" (Regulation § 20.-2031–8(a)(2)). However, in the case of the simultaneous death of the decedent-owner of the policy and the insured, it is the circumstances of the deaths which is unusual, not the "nature of the contract," Old Kent Bank and Trust Company v. United States, 430 F.2d 392, 394, so that this limited exception is not available. Because of these differences between Regulations § 20.2013–4 and 20.-2031–8, we find cases arising under the latter unpersuasive as to the problem at hand.

The district court opinion in *Old Kent,* besides considering the valuation of an insurance policy, decided the legal issue involved here. The wife's will also created a trust with a life estate in her husband and the husband's estate sought a credit under § 2013 based upon the value of his life interest. Since the parties died in a common accident under circumstances where there was no proof that they died other than simultaneously, the district court ruled that the husband's life estate, for purposes of tax credit, had no value because at the time of the wife's death the husband's death was apparent or inevitable so that a prospective buyer, knowing the facts, would bid nothing. 292 F.Supp. 53–55. This holding was not questioned on appeal and fully supports our decision.

We conclude, therefore, that in the exceptional case the actuarial tables in the regulations need not be applied. Where at the time of the transferor's death it was unmistakable to one in possession of the facts that the transferee's life would be radically shorter than predicted in the actuarial tables, the value of a transferred life estate may be reduced accordingly for purposes of calculating the tax credit under § 2013.

Here, the only reasonable conclusion is that Mrs. Lion's life estate was valueless at the instant of its creation and its destruction. If the life estate, in fact, ever vested, it terminated moments thereafter. One cannot imagine that a buyer in the market place would pay anything for a life estate, no matter how substantial the res, which could last, at most, for only moments. Recognized valuation principles point unerringly to a zero value of Mrs. Lion's life estate.

The judgment of the Tax Court is Affirmed.