ESTATE OF Llewellyn BURCHELL, the Chase Manhattan Bank, formerly Chemical Bank, Executor, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 96 CIV. 6757(JSR).

United States District Court, S.D. New York.

May 29, 2001.

---

Michael Frankel, Carter, Ledyard & Milburn, New York City, for Plaintiff.

Maya Wiley, Kathy Marks, Assistant United States Attorney, United States Attorney's Office, New York City, for Defendant.

## ORDER

RAKOFF, District Judge.

On this motion for summary judgment, the pertinent facts, either undisputed or, where disputed, taken most favorably to the plaintiff, are as follows. At her death on January 1, 1991, Llewellyn Burchell ("Llewellyn") left a testamentary charitable remainder unitrust, granting a life tenancy to her 67–year–old stepson Samuel Burchell III ("Samuel") and the remainder to the Columbia University College of Physicians and Surgeons. Llewellyn's estate filed a federal estate tax return, claiming a charitable deduction of $4,051,884.35, i.e., the value of the remainder interest after subtracting from the value of the trust the value of Samuel's life tenancy determined as of January 1, 1991 in accordance with Internal Revenue Service valuation and mortality tables. The tax return was accepted by the IRS and the estate paid an estate tax of $1,431,635.

In May 1991, Samuel was diagnosed for the first time with cancer, from which he subsequently died in April 1992, fifteen months after Llewellyn's death. Llewel-

lyn's estate then filed an amended federal estate tax return, claiming that Samuel's life interest in the unitrust should be valued according to what was now known to have been his actual remaining lifetime of fifteen months, rather than his predicted life expectancy as of January 1, 1991 as indicated by IRS mortality tables. Under this theory, the charitable deduction would increase to $7,472,918.20, the estate tax owed would decrease to $25,813.91, and the estate would be entitled to a refund of more than $1.4 million. The IRS declined to grant the refund, the estate brought the instant lawsuit, and the Government brought the instant motion for summary judgment. For the following reasons, the motion must be granted.

*Revenue Ruling*, 1966 WL 15345, 66–307, in effect at the time of Llewellyn's death, provided that "the value of life and remainder interests must be determined from facts available at the time of the death of the decedent." *Rev. Rul.* ,1966 WL 15345, 66–307, 1966–2 C.B. 429. The meaning and practical effect of *Revenue Ruling*, 1966 WL 15345, 66–307 were further elaborated in *Revenue Ruling*, 1980 WL 129641, 80–80, also in effect at the time of Llewellyn's death, which provided as follows:

> the current actuarial tables in the regulations shall be applied if valuation of an individual's life interest is required for purposes of the federal estate or gift taxes unless the individual is *known to have been afflicted, at the time of transfer,* with an incurable physical condition that is in such an advanced stage that death is clearly imminent.

*Rev. Rul.*, 1980 WL 129641, 80–80, 1980–1 C.B. 194 (emphasis added).[1]

---

**1.** Both *Revenue Ruling,* 1966 WL 15345, 66–307 and Revenue Ruling 80–80 were subse-

quently rendered obsolete by *Revenue Ruling,* 1995 WL 738146, 96–3, 1996–1 C.B. 348.

Plaintiff no longer contends, as it once did, that Samuel's cancer was known to his doctors or himself at the time of Llewellyn's death.[2] Plaintiff contends, however, that "at the time of transfer" modifies "afflicted" instead of "known"; that the present tense "is known" refers to knowledge of the disease at some (unknown) time after the transfer; and that "known" is used to mean certainty rather than conscious awareness. Thus plaintiff reads the quoted sentence in *Revenue Ruling*, 1980 WL 129641, 80–80 to mean that a departure from the use of actuarial tables is warranted when at some time after the decedent's death it becomes certain that at the time of decedent's death the life tenant suffered from a terminal disease making the life tenant's death imminent.

This is a reading that only a lawyer could love. It would replace the relative certainty of measuring a life interval by what is known to the life tenant and his doctors at the time his life tenancy comes into being with what is discovered to a "certainty" by some revelation at some unspecified time in the future. It would render practically meaningless the words of *Revenue Ruling*, 1966 WL 15345, 66–307, which *Revenue Ruling*, 1980 WL 129641, 80–80 clarified but did not displace,[3] that "the value of life and remainder interests must be determined from facts available at the time of the death of the decedent." In short, it is nonsense.

By contrast, the practice of valuing a life interest by applying actuarial tables to the facts known by the life tenant and his doctor at the time the tenancy comes into effect on the decedent's death makes complete, practical sense, and has been repeatedly approved by the courts, including the Supreme Court, even when the life tenant survives the decedent by only a short period. *See, e.g., United States v. Provident Trust Co.,* 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793 (1934); *Ithaca Trust Co. v. United States,* 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929); *Bank of Cal. v. United States,* 672 F.2d 758 (9th Cir.1982). Plaintiff's arguments concerning valuation principles applicable in other areas are inapposite as they fly in the face not only of these direct precedents but also of the plain meaning of the applicable regulations.

Accordingly, defendant's motion for summary judgment is hereby granted, and the complaint is hereby dismissed in its entirety. Clerk to enter judgment.

SO ORDERED.

---

**2.** Earlier in this litigation, plaintiff attempted to raise a factual issue that Samuel's illness was known at the time of Llewellyn's death based on the affidavit of one Dr. William Skinner, who was one of Samuel's physicians. Dr. Skinner's affidavit and the purported medical records he produced in support thereof led to his indictment for the making of false and fraudulent statements, and the instant case was then put on hold while the criminal case proceeded. Although Dr. Skinner was ultimately acquitted of the criminal charges, plaintiff's brief on the instant motion does not argue or in any way contend that anyone knew of Samuel's illness at the time of Llewellyn's death. *See* Mem. Law in Opp'n to U.S.'s Mot. Summ. J.

**3.** There is no support, either in the words of the revenue rulings themselves or in their legislative history, for plaintiff's fallback contention that *Revenue Ruling*, 1980 WL 129641, 80–80 replaced *Revenue Ruling*, 1966 WL 15345, 66–307, rather than simply elaborating its meaning and operation.