Estate of Carolyn G. Caughey, Union Trust Company of the District of Columbia, Executor, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 99655.   Promulgated May 6, 1941.

*George E. Hamilton, Jr., Esq.,* and *Leo N. McGuire, Esq.,* for the petitioner.

*Lloyd W. Creason, Esq.,* for the respondent.

386

388

OPINION.

SMITH: Our first question is whether under the decedent's will there was a completed gift of the residuary estate to the Girl Scouts, which admittedly is a charitable organization within the meaning of section 303 (a) (3) of the Revenue Act of 1926, as amended.

It is to be noted that by the provisions of the decedent's will the remainder of her estate, upon the death or remarriage of her husband, was to be divided into two equal parts, one of which was to be paid over to the Girl Scouts "if they still be operating Rockwood Manor" and the other to be held in trust for 20 years and then paid over to the Girl Scouts upon the same condition. The use of the first half of the remainder estate was restricted to the "development and improvement of the property", but there was no restriction on the use of the other half except that from such funds a bell tower was to be erected at Rockwood Manor.

It was only in the event that the Girl Scouts should abandon Rockwood Manor or cease to use it "for character building purposes" that any of the residuary estate was to go to the Esther Chapter of the Eastern Star. This same condition attached to the conveyance of Rockwood Manor, that is, if it should ever be abandoned or cease to be used for character building purposes it was to go to the Esther Chapter of the Eastern Star.

We do not think that any of the conditions imposed upon the gift of the remainder of the estate to the Girl Scouts made it contingent or conditional, so as to prevent its vesting in the donee immediately upon the decedent's death. Article 47 of Regulations 80 provides as to "Conditional bequests" that:

If the transfer is dependent upon the performance of some act or the happening of some event in order to become effective, it is necessary that the performance of the act or the occurrence of the event shall have taken place before the deduction can be allowed.

The transfer of the remainder of the decedent's estate to the Girl Scouts was not dependent upon the performance of any act by the donee or the happening of any event. Neither was it dependent upon the voluntary act of any third party. Cf. *John Nicholas et al., Executors*, 40 B. T. A. 1040. It was to take place, certainly, upon

the death or remarriage of John Wilson Caughey as to the first half, and 20 years from that date as to the second half, provided only that the Girl Scouts should not have abandoned Rockwood Manor but should have continued to operate it for character building purposes. We shall assume that the respondent does not regard the possibility of the use of the property by the Girl Scouts for purposes other than "character building" as a serious contingency. Actually, then, the Girl Scouts have only to remain in possession and operation of Rockwood Manor in order to qualify for the entire residue of the estate, after termination of the intermediate estates. Their duty is a passive and not an active one.

In *First National Bank* v. *Snead*, 24 Fed. (2d) 186, a bequest to a charitable institution of the income of a residuary estate after the death of the life tenant was held to vest at the time of the testator's death where at that time the institution was in existence and capable of taking the bequest.

The respondent has ruled in E. T. 13, Cumulative Bulletin 1939-2, p. 326, on facts quite similar to those in the instant case, that a bequest to an orphans' home of the income of a residuary estate, after a life estate in the testator's wife, was deductible from the gross estate although subject to the condition that the orphans' home should not move from a certain county in Arizona or cease to operate for the same purpose as it had operated before the testator's death. The ruling states that:

The M Association, by virtue of A's will, has a vested remainder in the trust income subject to being divested by reason of its removal from N County or the cessation of its operation of a home for orphan children, which are conditions subsequent. (See *Fargason* v. *Commissioner*, 21 B. T. A. 1032, acqiescence, C. B. X-2, 22 (1931).) Conditions subsequent are those whose effect is not produced until after the vesting of the estate. "* * * a condition subsequent defeats the estate in case it does not happen or is not performed." (*United States* v. *Fourth National Bank in Wichita, Kans.*, 83 Fed. (2d) 85.) * * *

Whether conditions imposed upon a testamentary gift to charity are sufficient to defeat the deduction of the gift in computing the Federal estate tax depends upon the degree of likelihood that the conditions will prevent the ultimate possession and enjoyment of the gift by the donee. The deduction must be denied where the bequest is so uncertain that its value can not be determined from any known data but depends upon mere speculation. *Humes* v. *United States*, 276 U. S. 487. However, if the contingency is reasonably certain not to happen or is so remote as not seriously to affect the value of the gift the deduction will be allowed. *United States* v. *Provident Trust Co.*, 291 U. S. 272; *City Bank Farmers' Trust Co.* v. *United States*, 74 Fed. (2d) 692; *Boston Safe Deposit & Trust Co. et al., Executors*, 20 B. T. A. 1159.

In *United States* v. *Fourth Nat. Bank in Wichita*, 83 Fed. (2d) 85, a bequest to a church on the condition that the church would contribute an equal amount, and other conditions not shown to have been complied with at the time of the testator's death, was held not deductible. See also *Davison* v. *Commissioner*, 81 Fed. (2d) 16; *Delaware Trust Co.* v. *Handy*, 53 Fed. (2d) 1042; *Old Point National Bank, Executor*, 39 B. T. A. 343; *Francis L. Robbins, Jr., Executor*, 39 B. T. A. 599; affd., 111 Fed. (2d) 828. The cases cited in which the deductions were disallowed all contain facts which distinguish them from the instant case.

In the construction of wills the intention of the testator is always the first consideration. There is no doubt that in the instant case it was the intention and purpose of the testatrix to leave all of the residue of her estate, after termination of the intervening estates, to the Girl Scouts. We do not think that the conditions which the testatrix imposed upon the gift negative that purpose. They serve merely as a precaution against the diversion of the gift from the charity for which it was intended.

The respondent further contends that, even though there was a completed, unconditional gift of the residue of the estate, the deduction claimed must be disallowed because the value of the gift is not definite in amount and can not be determined. The computation of the value of the gift, he contends, does not take into consideration:

(1) The possible or probable invasion of corpus of the trust estate upon the demand of John W. Caughey on account of some misfortune or for his comfort.

(2) The value of the right of John W. Caughey to the exclusive use of two rooms and private bath on the first floor of Rockwood Manor for life.

(3) The payment of $1,000.00 per year to Henry F. Harding and $600.00 per year to Nora Huffman for the life of John W. Caughey and for a period of 20 years thereafter.

In *Ithaca Trust Co.* v. *United States*, 279 U. S. 151, the Supreme Court held that gifts to charity of the remainder of a trust estate after a life estate in the testator's wife, with authority to use from the principal any amount "that may be necessary to suitably maintain her in as much comfort as she now enjoys", were not so uncertain in amount as to prevent their deduction in computing the estate tax. The Court said in its opinion that:

\* \* \* The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator and even after debts and specific legacies had been paid was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs.

In the case at bar the principal could be invaded only "should illness, accident or misfortune require more than the net income monthly for the proper care and comfort of my husband." Not only was the

standard fixed by the words "proper care and comfort", but even that invasion of the principal was permissible only if "illness, accident or misfortune require." The income of the estate here was more than ample for any probable requirements of the husband and, under the rule of *Ithaca Trust Co.* v. *United States, supra,* the right of the trustee to invade the principal did not render the gift to charity so uncertain in amount as to prevent its deduction. See also *Lucas* v. *Mercantile Trust Co.*, 43 Fed. (2d) 39; *Humphrey* v. *Millard,* 79 Fed. (2d) 107.

The right of the husband to the "exclusive use" of "two rooms and private bath" in Rockwood Manor for life did not in any manner affect the gift of the remainder of the estate. That was a condition subsequent imposed upon the gift of Rockwood Manor, and the respondent has allowed the deduction of that gift without question.

The payments of $1,000 per year to Henry F. Harding and $600 per year to Nora Huffman were for the purpose of compensating them for services which they were to render to the trustee so long as each should live but not beyond the term of the trust. In the administration of the trust estate these payments were treated by the trustee as a part of the expenses of the estate and were apparently claimed as deductions from gross income for the years 1936 to 1939, inclusive. We do not have before us in this proceeding the question as to the liability of the estate for income taxes for any year. There is nothing in the record, however, to indicate that the respondent ever questioned the right of the estate to claim that the payments were legal deductions from the gross income of the estate, or that John Wilson Caughey ever claimed that the net income of the estate distributable to him was greater than the amounts shown by the trustee's books. In this situation we do not think that it is necessary to take into account the payments to be made to Henry F. Harding and to Nora Huffman in the determination of the value of the remainder interest which was devised and bequeathed to the Girl Scouts. In any event there was only the remotest likelihood that the income from the trust estate would not at all times be more than ample to meet these payments. In the years 1936, 1937, 1938, and 1939 the net income of the trust after the deduction of the annuity payments amounted to over $8,000 a year, while it is stipulated that the yearly expenses of the husband for those years amounted to not more than $4,000.

The amount which is deductible from decedent's gross estate on account of the gifts to the Girl Scouts is the value of Rockwood Manor, which the respondent has allowed in the amount of $38,375, plus the value at the date of decedent's death of the remainder of the estate after termination of the trust, computed by the use of mortality tables. *Ithaca Trust Co.* v. *United States, supra.* It is

stipulated that for the purpose of such computation the factor of .78264 may be taken as the present worth of $1 due at the death of a person 76 years of age.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

———

MURDOCK, dissenting: The issue in this case is whether or not there was such a bequest or devise to the National Girl Scouts, Inc., a charitable organization, as to entitle this estate to a deduction. There was no absolute bequest or devise under the will. The bequest would be defeated to the extent that the corpus might have to be invaded to properly care for the husband of the decedent in case of illness, accident, or misfortune. The devise of the property known as Rockwood Manor was subject to the condition that the National Girl Scouts, Inc., would continue to use it for the specified purposes. One-half of the proceeds from the sale of certain property, after the death of the husband, was to go to the National Girl Scouts, Inc., but only for the development and improvement of Rockwood Manor and only upon condition that the National Girl Scouts, Inc., would continue to operate Rockwood Manor for the prescribed purposes. The remaining one-half of the proceeds of the sales was to go to the National Girl Scouts, Inc., 20 years after the death of the husband if they were still in possession of Rockwood Manor at that time.

The prevailing opinion starts off on a false foundation by assuming that the National Girl Scouts, Inc., will fully qualify and take the entire residue under the will by meeting all of these conditions. These are the very matters at issue in the case and should be decided upon proof or lack of proof and not upon assumption. The National Girl Scouts, Inc., was not in existence 25 years before the death of this decedent, and we have no right to assume, as a basis for decision for the petitioner, that it will be in existence 26 years after the death of the decedent and that it will remain in possession of Rockwood Manor and use it as required by this will in order to fully qualify and take all of the residuary estate. If the proof is difficult, or even impossible, the petitioner, upon whom the burden rests, is left with an unenforceable claim. *Burnet* v. *Houston*, 283 U. S. 223. I think the proof is inadequate to show that the Commissioner erred.

STERNHAGEN and HARRON agree with this dissent.