Estate of Helen Thompson, Deceased, Girard Trust Corn Exchange Bank, Executor v. Commissioner.
Estate of Thompson
Docket No. 61834.
United States Tax Court
T.C. Memo 1958-100; 1958 Tax Ct. Memo LEXIS 126; 17 T.C.M. (CCH) 510; T.C.M. (RIA) 58100; May 29, 1958
Clarence E. Hall, Esq., 1710 Locust Street, Philadelphia, Pa., for the petitioner. Stephen P. Cadden, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: A deficiency in estate tax in the amount of $7,494.90 has been determined by the Commissioner against the petitioner. The issue presented for our decision is whether certain bequests by decedent of remainders to charities are deductible as charitable gifts under section 812(d) of the Internal Revenue Code of 1939. Findings of Fact Facts which have been stipulated are so found. Helen Thompson, a resident of Philadelphia, Pennsylvania, was born December 22, 1864, lived all her life in that city and died a spinster on January 5, 1954, testate. *127 Her last will and testament executed May 16, 1951, and two codicils thereto were duly probated in Philadelphia County, Pennsylvania, having been filed for probate on January 19, 1954. Girard Trust Corn Exchange Bank and Thomas B. Lewars were appointed and qualified as executors. The latter died April 19, 1956. Prior to his death the executors filed their estate tax return April 4, 1955, with the district director of internal revenue at Philadelphia. The return disclosed a gross estate of $828,639.74 and a net estate for basic tax of $699,338.35. The executors, in computing the net estate for basic tax, deducted from the gross estate the amount of $22,405.75 as being their estimate of the total present worth of decedent's bequests of remainder interests to 4 conceded charities following a life estate to her friend, Katharine Martin, also a spinster, of New York City. Decedent's will, insofar as here pertinent, provided as follows: "NINTH: I give and bequeath to my Trustees hereinafter named the sum of Twenty-five Thousand Dollars ($25,000.00) IN TRUST, nevertheless, to, and for and upon the following uses, intents and purposes: to invest, reinvest and keep the same invested and *128 to receive all rents, interest, income and profits, and after deducting all necessary and lawful charges therefrom to pay the net income thereof to my friend, KATHARINE MARTIN, of New York, for her life. "Trustees may in their sole discretion apply the income of this Trust for the maintenance and support of the beneficiary, should she by reason of age, illness or any other cause, in the opinion of trustees, be incapable of disbursing it. "Trustees may further expend out of principal of this Trust such sums as trustees, in their sole discretion, may deem to be necessary for the best interests of the beneficiary, during illness or emergency of any kind. "TENTH: Upon the death of said KATHARINE MARTIN said Trust shall terminate and from said funds I give and bequeath the sum of Five Thousand Dollars ($5,000.00) each to the following charities: WOMEN'S PENNSYLVANIA SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, CHILDREN'S HOSPITAL OF PHILADELPHIA, at 18th and Bainbridge Streets, Philadelphia, SEEING EYE, INC., of Morristown, New Jersey, and VISITING NURSE SOCIETY OF PHILADELPHIA." The codicil dated March 19, 1952, provided as follows: "TENTH A: If after the distribution made *129 in accordance with Item Tenth there shall remain any balance or residue of the trust fund created in Item Ninth, I give and bequeath said balance or residue in equal shares to said charities: WOMEN'S PENNSYLVANIA SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, CHILDREN'S HOSPITAL OF PHILADELPHIA. SEEING EYE, INC., and VISITING NURSE SOCIETY OF PHILADELPHIA, it being my intention that the entire balance or residue of said trust fund should be distributed to and among said charities." In addition, decedent bequeathed $1,000 to Katharine to be paid her "at once." In due course in accordance with decedent's bequests the above-named executors as co-trustees came into possession of $25,000 of decedent's estate which they proceeded to administer under the terms of those bequests. Decedent and Katharine Martin had been friends from their childhood. At her death and for many years prior thereto decedent had been a wealthy woman while Katharine had for many years lived without an income. She had been and at decedent's death still was subsisting solely on the amount of $125 each month which was given to her by decedent. She was aged at decedent's death, having been born July 16, 1865, but *130 was in reasonable health and not under a doctor's care. She resided alone in an apartment in New York City for which she paid $85 monthly rental. On March 2, 1956, Katharine suffered accidental injuries from which she failed to recover and died March 19, 1956, leaving no estate. At no time during Katharine's life did the trust corpus produce income of $125 per month and the trustees shortly subsequent to decedent's death in their sole discretion began to supplement such income as it did produce with sufficient from the principal to provide her with that amount. At her death the total invasion of principal for Katharine's benefit amounted to $1,568.58 with an additional expenditure therefrom of $507.59 for her funeral expenses. In arriving at the least amount the charities would, in their estimation, ultimately receive at Katharine's death the executors deducted from the trust principal the sum of $2,594.25 as being their calculation of the probable total extent of the invasion of the principal for Katharine's benefit. In making their estimation they considered the beneficiary's life expectancy to be 1.66 years subsequent to the date of decedent's death. No reasonably accurate determination *131 could be made as of the date of the death of decedent of the value of the remainder interests here involved which would at Katharine's death constitute gifts by the decedent to the 4 charities named in her will. Opinion The parties pose the issue with which we are faced in words characteristic of their respective theories of the case. As we view the issue it is whether by her will decedent with sufficient degree of certainty made a gift to charity of any of her estate so that the amount of such gift may be determined, thus allowing its deduction under section 812(d) of the 1939 Code. [1]
It is well settled that the discretionary right in trustees to invade the corpus of a trust for the benefit *132 of a primary cestui que trust will not alone prevent the deduction for estate tax purposes of a remainder to charity. Ithaca Trust Co. v. United States, 279 U.S. 151; Commissioner v. Wells Fargo B. & U. Tr. Co., 145 Fed. (2d) 130, affirming a memorandum decision of this Court [2 TCM 113]. It is equally well settled however that the amount of such gifts must be accurately determinable on the basis of known facts existing at the date of death of the donor. Helvering v. Union Trust Co., 125 Fed. (2d) 401, reversing Estate of Carolyn G. Caughey, 44 B.T.A. 385; De Castro's Estate v. Commissioner, 155 Fed. (2d) 254, affirming a memorandum decision of this Court [4 TCM 636], certiorari denied 329 U.S. 727. See also Estate of Bartlett v. Smith, 153 Fed. Supp. 674. If the amount of the gift is accurately determinable, it logically follows that a gift in that amount has been made and if made to charities is deductible. If the amount is not accurately determinable at the donor's death, logically no completed gift has been made either in law or fact. Helen Thompson clearly *133 in her will evidenced a desire and intent to provide sufficient income to be paid to or disbursed for the benefit of her lifelong friend in accordance with her standard of living established over the years by her expenditures for the friend's support, i.e., at the rate of $125 per month. However, this was equally clearly not her sole objective. She was aged herself and had known the circumstances of Katharine for many years. She knew of the infirmities attendant upon old age and that they are many and varied. She knew Katharine as her years advanced was apt to become a more ready victim to disease and accidental injury. She knew Katharine, in case she were felled by one or the other, being without other means of defraying the expenses incident to illness or injury, would be dependent for her welfare solely on decedent's largesse. It is true that she in all probability calculated the life expectancy of Katharine, but we cannot discover in her will or this record any indication that Katharine's life estate or the right of the trustees to invade the corpus of the trust was to be limited by that factor. It is clear that decedent anticipated all the exigencies of life and fully intended *134 her trustees would invade the corpus of the trust estate to whatever extent the trustees deemed necessary to protect Katharine from the consequences of "illness or emergency of any kind." Had the purpose of decedent's bequest consisted only of providing a monthly stipend for Katharine of $125, petitioner's contention might be more sound, but the purpose being as above indicated we cannot agree that Helen Thompson ever intended to or did make a gift to charity with any reasonable certainty. It is only through the occurrence of events subsequent to her death that the charities became certain of benefiting from her bequest. It is only because such subsequent events may give clarity to and understanding of the intent and desires of a testator at the date of a will that such events may be considered with respect to this issue. Assuming the existence of an estate at the death of the testator, the crucial date with respect to the intent of a testator is nevertheless the date of the will. Decedent's primary and overriding purpose in creating the trust here involved was to defray the ordinary living and emergency expenses of Katharine. If there was a remainder, it was to be donated to charity. *135 To say with any degree of certainty at the date of decedent's death what emergencies and illnesses might arise relating to Katharine and what the expense incidental thereto would be is not reasonably possible. Indeed, it is not too difficult to imagine a single disease the cure or attempted cure of which might necessitate the complete exhaustion of the corpus of this trust. The same may be said of many injuries arising from accidents occasioned by infirmities of advanced age. Ithaca Trust Co. v. United States, 279 U.S. 151, is cited by petitioner in support of its position. We think the case before us is clearly distinguishable on its facts. In Ithaca a provision was made by the testator that his wife was to be supported in her accustomed manner by the income of a trust fund with a power in the trustees to invade the corpus in their discretion for that purpose. The income from the trust was ample in consideration of the ordinary exigencies of life to defray the widow's living expense. The occasion for invading the principal of the trust was remote at the date of the donor's death. Here it is clear that should the investment of the trust fund produce the amount of income *136 obviously calculated by the testatrix, it would be no more than sufficient to furnish the beneficiary $125 per month, in other words, sufficient only to fulfill but one purpose of the donor. Under the best of circumstances, so far as return on the invested trust fund is concerned, it was clear at decedent's death that the beneficiary's expense of any illness, injuries arising from accident and emergencies of any kind must be borne by the trust corpus. We find the petitioner has failed to meet the test of deductibility of charitable remainders established by the Supreme Court in that case, i.e., at the date of vesting of the trust estate the likelihood of invasion of the trust corpus was so remote as to permit a conclusion that the charities would ultimately receive an amount which could at the date of vesting be ascertained. We have examined other decisions cited by petitioner and find them equally distinguishable in principle from the case at bar. Decision will be entered for the respondent. Footnotes
1. SEC. 812. NET ESTATE. For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate - (d) Transfers for Public, Charitable, and Religious Uses. - The amount of all bequests, legacies, devises, or transfers * * * to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *↩