ESTATE OF GLORIA A. LION, DECEASED, MORTON E. ROME AND GEORGE L. CLARKE, EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5114–67. Filed June 30, 1969.

*Robert P. Mittelman,* for the petitioners.
*George K. Dunham,* for the respondent.

#### OPINION

KERN, *Judge:* The respondent has determined a gross deficiency in Federal estate taxes in the amount of $129,113.77 and a net deficiency of $69,016.76 upon allowing additional credit for State death taxes allowable if substantiated in the amount of $60,097.01.

Petitioner does not contest any of the adjustments in decedent's taxable estate made by respondent in his "Statement" attached to

the notice of deficiency. However petitioner alleges that respondent erred in denying an additional credit in the amount of approximately $121,309.27 under section 2013, I.R.C. 1954,[1] based upon the value of a life estate as affected by various provisions for invasion of corpus, bequeathed to decedent by her husband who died simultaneously with her. This claim for additional credit was made by petitioner after the estate tax return was filed and was disallowed by respondent in his notice of deficiency. The parties have stipulated that the exact amount of petitioner's section 2013 credit, if allowed, is subject to computation under Rule 50. The parties have also agreed that the petitioner may be entitled to an additional deduction upon the payment of attorney's fees and expenses which will be determined in a Rule 50 computation.

This case was submitted on a complete stipulation of facts pursuant to Rule 30. The stipulation and the exhibits attached thereto are incorporated herein by this reference and are adopted as our findings of fact. A summary of the pertinent facts is set forth below.

Morton E. Rome and George L. Clarke, with offices now, and at the time of filing of the petition in this proceeding, located at 10 Light Street, Baltimore, Md., are executors of the Estate of Gloria A. Lion, petitioner. An estate tax return was filed on behalf of petitioner with the district director, Baltimore, Md.

Gloria Lion and her husband, Albert, "were traveling by air in the Middle East when their plane crashed near Cairo, United Arab Republic, on or about May 12, 1963 and both were killed under the circumstances such that there is no sufficient proof to determine the chronology of their deaths." [2] There were no survivors and no identifiable remains of either Gloria or Albert could be recovered from the scene of the crash. Gloria was 45 years old at the time of her death.

The will of Albert Lion, duly admitted to probate, contained the following paragraph:

FIFTH: If my wife, Gloria A. Lion, shall die simultaneously with me or under such circumstances that there is no sufficient proof to determine which of us predeceased the other, I direct that my said wife shall be deemed to have survived me, and that the provisions of this Will shall be construed upon that presumption, notwithstanding the provisions of any law establishing a different presumption in the order of death.

Albert's will also provided, in general, that after payments of debts, funeral expenses, certain taxes, and bequests of certain tangible personal property, the rest and residue of his estate was to be divided into two equal parts each one subject to a trust. One trust, denominated the "Marital Trust," provided for the payment of the net in-

---

[1] Hereafter all statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

[2] This quoted language is from the stipulation.

come of that part to Gloria during her life and the remainder to whomever she would appoint by her will. There were also provisions for invasion of corpus for the benefit of Gloria under various conditions. The estate of Albert Lion claimed a marital deduction based upon the value of the corpus of this trust, and the corpus of this trust was included in Gloria's estate in the estate tax return filed by the petitioner.

With regard to the other equal part of the residue of his estate, Albert's will provided in pertinent parts as follows:

C. In the event that my said wife, GLORIA A. LION, be living at the time of my death, the second and said equal parts of said rest, residue and remainder, as hereinabove defined, shall be paid over to GLORIA A. LION, REUBEN OPPENHEIMER and MORTON E. ROME, or the survivors or survivor, Trustees, in a Trust separate and apart from the "Marital Trust", for the uses and purposes hereinafter set forth.

* * * * * * *

1. The Trustees shall pay over the entire net income of the Estate in periodic installments, as nearly equal as possible, unto my wife, GLORIA A. LION, during the term of her natural life.

2. The said GLORIA A. LION, in addition to the income payments hereinabove provided, shall have the power to withdraw, in her sole discretion, amounts out of the corpus of this Trust Estate not exceeding Five Thousand Dollars ($5,000.00) in each calendar year; this power of annual withdrawal hereby granted unto the said GLORIA A. LION shall not be cumulative from year to year.

3. In addition, while my said wife, GLORIA A. LION, is living, REUBEN OPPENHEIMER and MORTON E. ROME, Trustees (excluding GLORIA A. LION, Trustee) are hereby authorized in each and every calendar year to pay to the said GLORIA A. LION, in addition to the income of the Trust, a sum or sums from the corpus of the Trust Estate not in excess of Five Thousand Dollars ($5,000.00), provided that in the opinion of the said REUBEN OPPENHEIMER and MORTON E. ROME (excluding GLORIA A. LION, Trustee) there are such circumstances that render such payment of corpus to the said GLORIA A. LION desirable. * * *

Upon Gloria's death the trust corpus was to be divided into two separate trusts for the benefit of the two children of Albert and Gloria. The trust of each child was to exist until the child reached age forty (40), at which time the trust would terminate and the corpus be distributed. Neither the corpus of this nonmarital trust nor the value of any life estate therein was included in petitioner's estate tax return.

Petitioner's estate tax return was audited by the respondent. As a result of this audit there were adjustments in the valuation of certain assets listed in the return with the result that a deficiency in estate tax was determined in the amount of $129,113.77. During the course of the audit, petitioner made a claim for a credit pursuant to section 2013 of the Code. The claimed credit was based upon and measured

by the life estate with respect to the second trust created by Albert's will. The amount of the claimed credit was computed by assigning to the life estate in the trust a value based upon the *present value* factor of life expectancy of a person 45 years old and multiplying this factor by the value of the corpus of the second trust at the time of Albert's death.

The parties have stipulated certain Government statistics which according to petitioner's brief "demonstrate that commercial airline passengers have very high rates of survival of airline accidents." The petitioner points to the following facts as established by these exhibits: Passenger miles flown during the period 1954–64 increased from 21.3 billion to 61 billion; passenger fatality rates during that period per 100 million passenger miles ranged from 0.07 to 0.26; with minor variations the figures for the period 1956–66 were the same; in 1963 there were 49 accidents, 5 of which caused fatalities; and for the 5-year period 1962–66 international carriers had 16.3 percent of their accidents result in fatal injury, 38.8 percent in serious injury, and 44.9 percent in minor or no injury.

The respondent, in his statutory notice of deficiency, determined that the claimed credit under section 2013 was not allowable for the following reasons:

Gloria Lion perished simultaneously with her husband, Albert Lion, in a plane crash near Cairo, United Arab Republic, on May 12, 1963; even if Gloria Lion received a life estate, its momentary existence was due to a presumption and it was neither enjoyed by her nor did it enable her to enlarge her gross estate; even if the life estate technically qualified for credit under section 2013, its short duration would result in only de minimis credit.

The language of section 2013 pertinent to the instant controversy is as follows:

SEC. 2013. CREDIT FOR TAX ON PRIOR TRANSFERS

(a) GENERAL RULE.—The tax imposed by section 2001 shall be credited with all or a part of the amount of the Federal estate tax paid with respect to the transfer of property (including property passing as a result of the exercise or non-exercise of a power of appointment) to the decedent by or from a person (herein designated as a "transferor") who died within 10 years before, or within 2 years after, the decedent's death. If the transferor died within 2 years of the death of the decedent, the credit shall be the amount determined under subsections (b) and (c). * * *

\* \* \* \* \* \* \*

(d) VALUATION OF PROPERTY TRANSFERRED.—The value of property transferred to the decedent shall be the value used for the purpose of determining the Federal estate tax liability of the estate of the transferor. * * *

\* \* \* \* \* \* \*

(e) PROPERTY DEFINED.—For purposes of this section, the term "property" includes any beneficial interest in property, including a general power of appointment (as defined in section 2041).

Pertinent portions of respondent's Estate Tax Regs. are set forth in the margin below.[3]

Petitioner contends that the life estate in the nonmarital trust "passed" to Gloria within the meaning of respondent's regulation section 20.2013–5(b) and therefore there was a "transfer" to Gloria from a "transferor" (Albert) of "property" (the life estate), all within the meaning of section 2013. Citing *Ithaca Trust Co.* v. *United States*, 279 U.S. 151, certain portions of the legislative history relating to section 2013 and certain of respondent's regulations and revenue rulings, petitioner further contends that for purposes of the section 2013 credit the life estate in the nonmarital trust should be valued by using recognized actuarial tables rather than by reference to the actual events leading to the deaths of Albert and Gloria.

Respondent has contended orally and on brief that petitioner has failed to carry its burden of proving that there was a "transfer" of the life estate in the nonmarital trust under Albert's will to Gloria within the meaning of that term as it appears in section 2013.

In the alternative respondent argues that in order to determine any credit under section 2013 it is necessary for petitioner to establish the value of the life estate bequeathed to the "nonmarital trust" at the

[3] Sec. 20.2013–1. Credit for tax on prior transfers.

(a) *In general.* A credit is allowed under section 2013 against the Federal estate tax imposed on the present decedent's estate for Federal estate tax paid on the transfer of property to the present decedent from a transferor who died within ten years before, or within two years after, the present decedent's death. See section 20.2013–5 for definition of the terms "property" and "transfer." There is no requirement that the transferred property be identified in the estate of the present decedent or that the property be in existence at the time of the decedent's death. It is sufficient that the transfer of the property was subjected to Federal estate tax in the estate of the transferor and that the transferor died within the prescribed period of time. The executor must submit such proof as may be requested by the district director in order to establish the right of the estate to the credit.

Sec. 20.2013–4. Valuation of property transferred.

(a) For purposes of section 2013 and sections 20.2013 through 20.2013–6, the value of the property transferred to the decedent is the value at which such property was included in the transferor's gross estate for the purpose of the Federal estate tax (see sections 2031, 2032, and the regulations thereunder) reduced as indicated in paragraph (b) of this section. If the decedent received a life estate or remainder or other limited interest in property included in the transferor's gross estate, the value of the interest is determined as of the date of the transferor's death on the basis of recognized valuation principles (see especially sec. 20.2031–7). * * *

Sec. 20.2013–5. "Property" and "transfer" defined.

(a) For purposes of section 2013 and sections 20.2013–1 through 20.2013–6, the term "property" means any beneficial interest in property, including a general power of appointment (as defined in section 2041) over property. Thus, the term does not include an interest in property consisting merely of a bare legal title, such as that of a trustee. Nor does the term include a power of appointment over property which is not a general power of appointment (as defined in section 2041). Examples of property, as described in this paragraph, are annuities, life estates, estates for terms of years, vested or contingent remainders and other future interests.

(b) In order to obtain the credit for tax on prior transfers, there must be a transfer of property described in paragraph (a) of this section by or from the transferor to the decedent. The term "transfer" of property by or from a transferor means any passing of property or an interest in property under circumstances which were such that the property or interest was included in the gross estate of the transferor. * * *

date of Albert's death, that under the circumstances of this case the life estate of Gloria in that trust had no value and therefore, even if there had been a "transfer" of the life estate to Gloria, no credit would be available under section 2013.

Since we agree with respondent's alternative contention, it is unnecessary for us to decide the question of whether there was the transfer of property required by the provisions of section 2013.

A recent case closely analogous to the one before us is *Old Kent Bank and Trust Co.* v. *United States*, 292 F. Supp. 48 (W.D.Mich. 1968), in which a husband and a wife died simultaneously in an air crash and a credit was claimed under section 2013 on account of a life estate granted by will by one spouse to the other. It was held that valuing the life estate at the time of the transferor's death, its value to the transferee was zero. The Court said that on the facts which existed and could have been discovered by a hypothetical buyer at the time of death such "a hypothetical buyer would have paid nothing for the life interest of [the transferee], since his life would be immeasurably short." Accordingly the claimed tax credit under section 2013 was denied.

The rationale of that part of the opinion of the cited case which deals with the credit claimed under section 2013 is in accord with the rationale of this Court in *Estate of Roger M. Chown*, 51 T.C. 140, which considered the valuation of an insurance policy under similar circumstances. See also *Estate of Ellen M. Wien*, 51 T.C. 287.

In our opinion the analysis and solution of the problem involving the credit claimed under section 2013 made by the Court in the *Old Kent Bank and Trust Co.* case were correct.

It is also our opinion that the statistics stipulated by the parties having to do with the rate of survival in reported commercial airline accidents are irrelevant. What are relevant are the facts affecting Gloria's life expectancy with respect to this particular airline accident as they existed and could have been discovered by a hypothetical buyer of Gloria's life estate at the time of Albert's death; and the salient fact was that Gloria and Albert were both hurtling to their deaths in the same airline crash. If a reference to a hypothetical buyer of the life estate under these circumstances would seem to have "an unreal quality," [4] we can only say that in our opinion the valuation resulting from the hypothetical reaction of a hypothetical buyer on the assumed knowledge of the actual facts has more practical reality than a valuation resulting from the application in a factual vacuum of actuarial tables and mathematical formulae regardless of their statistical elegance. See *United States* v. *Provident Trust Co.*, 291 U.S. 272.

[4] See concurring opinion of Fay, J., in *Estate of Roger M. Chown*, 51 T.C. 140, 144.

We therefore decide that, assuming *arguendo* that a "transfer" of the life estate in the nonmarital trust under Albert's will had been made from Albert to Gloria, nevertheless the life estate had no value for the purpose of computing a credit for prior estate taxes paid with respect thereto under the provisions of section 2013. Hence we hold that the credit claimed by petitioner under section 2013 with respect to that life estate must be disallowed.

To reflect the allowance of certain deductions and credits available to petitioner which are not in dispute,

*Decision will be entered under Rule 50.*