ESTATE OF EVERARD W. MARKS, JR., DECEASED,
EVERARD W. MARKS III, ADMINISTRATOR, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF MARY A. GENGO MARKS, DECEASED, EVERARD
W. MARKS III, ADMINISTRATOR, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 48377-86, 48378-86.     Filed May 23, 1990.

*William C. Gambel* and *David I. Reader,* for the petitioners.

*Linda K. West,* for the respondent.

JACOBS, *Judge:* By separate notices of deficiency, respondent determined deficiencies in estate taxes in these consolidated cases as follows:

| Petitioner | Deficiency |
|---|---|
| Estate of Everard W. Marks, Jr............... | $276,598.85 |
| (Everard's estate) | |
| Estate of Mary A. Gengo Marks.............. | 118,203.58 |
| (Mary's estate) | |

By answer to the respective petitions (the amended petition with respect to Everard's estate), respondent asserted increased deficiencies against each estate; as increased the deficiencies are:

| Petitioner | Deficiency |
|---|---|
| Everard's estate.............................. | $324,116.19 |
| Mary's estate................................ | 213,128.57 |

Everard W. Marks, Jr. (Everard), and Mary A. Gengo Marks (Mary), husband and wife, both died as a result of the crash of a Pan American aircraft in Kenner, Louisiana, on July 9, 1982; it was not possible to determine who died first. Each of their gross estates (which primarily consist of each decedent's share of community property) approximated $1.8 million.

Respondent determined that in computing Everard's and Mary's gross estates, petitioners undervalued certain mineral rights and omitted the proceeds from certain life insurance policies. Respondent also determined that Everard's estate was not entitled to a claimed credit for tax on prior transfers taken with respect to Everard's usufruct in Mary's estate created as a consequence of a presumption under Louisiana law that he survived Mary.

Prior to trial, the parties reached an agreement as to the value of the mineral rights. Accordingly, after concessions the unresolved issues are: (1) Whether proceeds of insurance on the life of one spouse in which the other spouse was the named owner and beneficiary are includable in the gross estate of each spouse pursuant to sections 2042(2) and 2038 or 2035;[1] and (2) whether Everard's estate is entitled to a credit for tax on prior transfers pursuant to section 2013. Resolution of the first issue depends, to an extent, upon the proper characterization of the policies (community versus separate property) in the hands of the noninsured spouse.

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect as of the date of the decedents' deaths. All Rule references are to the Tax Court Rules of Practice and Procedure.

Resolution of the second issue depends upon the value to be placed on Everard's usufruct over Mary's share of community property; in this regard, we must decide whether the value of the usufruct should be calculated by using Everard's actuarial life expectancy (as Everard's estate contends) or by recognizing the fact that Everard and Mary died simultaneously (as respondent contends).

Some of the facts have been stipulated and are so found. The stipulations of fact and accompanying exhibits are incorporated herein by this reference. The parties have also agreed that petitioners may claim additional deductions for administration expenses to be determined in a Rule 155 computation.

Everard and Mary both died intestate. At the time of their deaths, each was 43 years of age, and each was a resident of Louisiana, a community property State. Their son, Everard W. Marks III, was appointed administrator of each estate. Everard W. Marks III resided in Louisiana when the petitions in these cases were filed.

For clarity, we will discuss our findings of fact and opinion by issue.

I. *Inclusion of Insurance Proceeds*

FINDINGS OF FACT

While married and domiciled in the State of Louisiana, Everard and Mary each applied (on April 21, 1981) for an insurance policy on the life of the other; the applicant spouse was listed as the owner and primary beneficiary of the policy. Their children were listed as contingent beneficiaries.

On July 1, 1981, Occidental Life Insurance Co. (Occidental) issued policy No. 6479837 insuring the life of Everard in the face amount of $500,000. On July 8, 1981, Occidental issued policy No. 6482033 insuring the life of Mary in the face amount of $250,000. Each policy provided that only the owner could exercise the policy rights, including the right to change beneficiaries. Community funds were used to acquire both policies.

Occidental policy No. 6482033 was reported on Mary's estate tax return as the separate property of Everard; as

such the proceeds therefrom were not included in her gross estate. Likewise, Everard's estate reported Occidental policy No. 6479837 on his estate tax return, and likewise, the proceeds therefrom were not included in his gross estate on the theory that such policy was Mary's separate property.

On brief, petitioners concede that the noninsured spouse owned a valuable right in the policy on the other's life which should have been (but was not) included in the noninsured spouse's gross estate pursuant to section 2033.

Respondent claims the policies are community property; accordingly, he claims one-half of the proceeds from each policy is includable in the insured spouse's gross estate pursuant to section 2042(2). The other half of the proceeds from each policy, respondent claims, is includable in the gross estate of the noninsured spouse pursuant to section 2038 or section 2035.

## OPINION

Pursuant to section 2042(2), a decedent's gross estate includes the proceeds of insurance policies on the life of the decedent which are payable to persons other than decedent's executor if, at the time of decedent's death, the decedent possessed any incidents of ownership in the policy. Whether or not a decedent (here, the insured spouse) possessed incidents of ownership in all or part of a given insurance policy is determined with regard to State law. Sec. 20.2042-1(c)(5), Estate Tax Regs. The incidents of ownership determination thus depends on whether the insurance policies in question are community or separate property under Louisiana law.

Under Louisiana law, a life insurance policy is a contract sui generis governed by rules peculiar to itself. Donations inter vivos of life insurance policies are not governed by the Louisiana Civil Code articles relative to donations inter vivos; no formal act to evidence a donation of a life insurance policy is required. La. Rev. Stat. sec. 622:1521 (West Supp. 1976); *Kelly v. National Life & Accident Insurance Co.,* 393 So. 2d 130 (La. App. 1980); *McElwee v. McElwee,* 255 So. 2d 883 (La. App. 1971), application denied 257 So. 2d 434 (La. 1972).

In *Catalano v. Commissioner,* 429 F.2d 1058, 1062 (5th Cir. 1969), the Fifth Circuit held that, under Louisiana law, where a husband takes out an insurance policy on his life and either irrevocably names his wife the beneficiary or makes her the owner of the policy, the husband retains no interest in the proceeds of the policy and, therefore, no incidents of ownership. As such, the policy becomes the separate property of the wife.

The rule in *Catalano* was extended to situations where the husband procures insurance on his wife's life and names himself the owner-beneficiary; in such circumstances, the policy was held to be the husband's separate property. *Bergman v. Commissioner,* 66 T.C. 887 (1976); *Estate of Saia v. Commissioner,* 61 T.C. 515 (1974).

Respondent claims that the aforementioned cases are factually distinguishable from the instant case, and he contends that petitioners have failed to overcome the presumption under Louisiana law which provides that property acquired during marriage is community property. We disagree.

Each spouse applied for an insurance policy on the other's life and procured the policy as its owner. In addition, each policy contained a clause which effectively gave the designated owner control over the policy. Accordingly, in our opinion, the insurance policies constitute separate property of the noninsured spouse. As such, neither insured spouse possessed any incidents of ownership in the policies and none of the proceeds from the policies is includable, under section 2042(2), in petitioners' respective gross estates.

Respondent claims (under alternative theories) that one-half of the proceeds of each policy is includable in the gross estate of the noninsured spouse. The first of respondent's alternative theories is based on the interplay of section 2038[2] and the presumption under Louisiana law that where both the insured and beneficiary die simultaneously, the insured is deemed to have survived the beneficiary. La. Rev. Stat. Ann. sec. 22:645 (West 1978). Premised on his characterization that the insurance policies were community

---

[2]Sec. 2038(a)(1) provides that the value of the gross estate includes the value of all property transferred by the decedent, the enjoyment of which at the date of death is subject to any change through the exercise of a power either done or in conjunction with another person to alter, amend, revoke, or transfer.

property, respondent reasons that because the insured is deemed to have survived the beneficiary, the insured, within the purview of section 2038, had "the right to change the beneficiary of one-half of the proceeds."

The flaw in respondent's reasoning is that the insurance policies were not community property. Respondent did not claim section 2038 is applicable if the policies were deemed to be the separate property of the noninsured spouse, and we express no opinion in that regard. See *Estate of Fusz v. Commissioner*, 46 T.C. 214, 215 (1966).

The second of respondent's alternative theories is based on section 2035.[3]

As a general rule, pursuant to section 2035(a), gifts made within 3 years of death are includable in the decedent's gross estate. However, upon the enactment of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 424, 95 Stat. 172, 317, the general rule of section 2035(a) does not apply with respect to persons dying after 1981, except for certain transfers described in section 2035(d)(2).

As applicable herein, section 2035(d)(2) allows the general rule of section 2035(a) to apply in the case of a transfer of an interest in property which is either included in the value of the gross estate under section 2042 or would have been included under section 2042 had such interest been retained by the decedent. Thus, in determining whether section 2035(d)(2) applies, we must first determine whether either of the decedents possessed any interest in the policy insuring his or her respective life under the terms of section 2042. *Estate of Leder v. Commissioner*, 89 T.C. 235, 242 (1987), affd. 893 F.2d 237 (10th Cir. 1989).

---

[3]Sec. 2035 provides, in relevant part, as follows:

SEC. 2035. ADJUSTMENTS FOR GIFTS MADE WITHIN 3 YEARS OF DECEDENT'S DEATH.

(a) INCLUSION OF GIFTS MADE BY DECEDENT.—Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death.

\*     \*     \*     \*     \*     \*     \*

(d) DECEDENTS DYING AFTER 1981.—

(1) IN GENERAL.—Except as otherwise provided in this subsection, subsection (a) shall not apply to the estate of a decedent dying after December 31, 1981.

(2) EXCEPTIONS FOR CERTAIN TRANSFERS.—Paragraph (1) of this subsection and paragraph (2) of subsection (b) shall not apply to a transfer of an interest in property which is included in the value of the gross estate under section 2036, 2037, 2038, or 2042 or would have been included under any of such sections if such interest had been retained by the decedent.

As we previously concluded, under Louisiana law neither decedent possessed any incidents of ownership in the policy insuring his (or her) life within the meaning of section 2042. As a result, the proceeds are not and never could have been included in either decedent's gross estate under section 2042. Therefore, apropos to our analysis in *Estate of Leder v. Commissioner, supra,* we herein conclude that the exception in section 2035(d)(2) is inapplicable. See also *Estate of Headrick v. Commissioner,* 93 T.C. 171 (1989); accordingly, the proceeds are not includable in either decedent's gross estate.

Petitioners correctly concede that the policy owned by the noninsured spouse should have been included in the noninsured spouse's gross estate. The value to be so included is the policy's interpolated terminal reserve value. See sec. 20.2031-8, Estate Tax Regs.; *Estate of Goldstone v. Commissioner,* 78 T.C. 1143, 1151 (1982); *Estate of Meltzer v. Commissioner,* 439 F.2d 798 (4th Cir. 1971), revg. T.C. Memo. 1970-62.

II. *Entitlement to Credit for Prior Transfers (Section 2013)*

### FINDINGS OF FACT

Under Louisiana law, as it existed in 1982, Everard was presumed to have survived Mary, La. Civ. Code Ann. art. 939 (West 1952) (repealed 1985); accordingly, he received by operation of law a legal usufruct over Mary's share of the spouses' community property.[4]

The usufruct was not included in Everard's gross estate. Nevertheless, in computing the net estate tax due, Everard's estate claimed entitlement to a $207,248 credit for tax on prior transfers (under section 2013) with respect to the usufruct. In calculating the value of the usufruct, Everard's estate ignored the fact that Everard and Mary died simultaneously. Rather, the value of the usufruct was calculated on the actuarial value of Everard's life expectancy. (The effect of such was to increase the value of the usufruct as well as the tax credit.) Respondent disallowed

---

[4]A usufruct is somewhat analogous to a life estate; however, unlike a life estate, a usufruct terminates upon remarriage. For a more complete description of the concept of a usufruct, see *Bergman v. Commissioner,* 66 T.C. 887, 895-896 (1976).

the claimed tax credit arguing that because Everard and Mary died simultaneously the usufruct had no value.

OPINION

Section 2013 provides a credit where the decedent-transferee receives property with respect to a transfer which itself is subject to estate tax and dies within 10 years following (or 2 years prior to) the death of the transferor.[5] (The theory for allowing such a credit is "to prevent the diminution of an estate by the imposition of successive taxes on the same property within a brief period." S. Rept. 1622, 83d Cong., 2d Sess. 122 (1954).) Generally, the amount of the section 2013 credit is based upon the value which the transferred property had in determining the decedent-transferor's estate tax liability. Sec. 2013(d).

For purposes of calculating the amount of the credit under section 2013 with respect to a life estate, the value of the transferred life estate is determined as of the date of the transferor's death on the basis of recognized valuation principles. Sec. 20.2013-4(a), Estate Tax Regs. However, the value of the life estate need not be included in the decedent-transferee's gross estate. Secs. 20.2013-1(a), 20.2013-4(a) ex. (2), 20.2013-5(a), Estate Tax Regs. ("The apparent rationale for allowing a [section 2013] credit for terminable interests [that is, a life estate or usufruct] is that the terminable interest may produce income that might be taxable in the life tenant's estate. [Further,] * * * income derived from the life estate might enable the decedent to conserve other assets which would then be subject to estate tax." *Holbrook v. United States,* 575 F.2d 1288, 1290 (9th Cir. 1978).)

The parties agree that in general a usufruct may qualify for the section 2013 credit; here, however, they disagree as to the value of the property which is subject to the credit. Petitioners, relying on *Estate of Wien v. Commissioner,* 441

---

[5]Sec. 2013 provides, in pertinent part, as follows:

SEC. 2013. CREDIT FOR TAX ON PRIOR TRANSFERS.

(a) GENERAL RULE.—The tax imposed by section 2001 shall be credited with all or a part of the amount of the Federal estate tax paid with respect to the transfer of property (including property passing as a result of the exercise or non-exercise of a power of appointment) to the decedent by or from a person (herein designated as a "transferor") who died within 10 years before, or within 2 years after, the decedent's death.

F.2d 32 (5th Cir. 1971), revg. 51 T.C. 287 (1968), contend that Everard's usufructuary interest is to be valued according to the actuarial tables provided in the regulations. Respondent, relying on *Estate of Lion v. Commissioner,* 438 F.2d 56 (4th Cir. 1971), affg. 52 T.C. 601 (1969), and *Old Kent Bank & Trust Co. v. United States,* 292 F. Supp. 48, 53 (W.D. Mich. 1968), revd. on other issues 430 F.2d 392 (6th Cir. 1970), contends that the value of the usufruct should be determined without reference to actuarial tables; he argues that the usufruct had no value due to the simultaneous deaths of Everard and Mary.

The District Court in *Old Kent Bank & Trust Co.* and the Fourth Circuit in *Estate of Lion* addressed the availability of the section 2013 credit in the context of a spousal life estate where both spouses died simultaneously. In both cases, the transferee's estate was denied entitlement to the credit. In reaching its result, the Fourth Circuit stated:

Where at the time of the transferor's death it was unmistakable to one in possession of the facts that the transferee's life would be radically shorter than predicted in the actuarial tables, the value of a transferred life estate may be reduced accordingly for purposes of calculating the tax credit under sec. 2013. [*Estate of Lion v. Commissioner,* 438 F.2d at 62.]

In *Estate of Wien v. Commissioner, supra,* the husband and wife died simultaneously in an airplane crash, each owning life insurance on the life of the other. There, the issue was the proper value of the insurance policies to be included in each decedent's gross estate. The Fifth Circuit, in reversing our determination that the entire proceeds were includable in the owner's gross estate, held that the ownership interest in the insurance policies should be valued in accordance with section 20.2031-8(a)(2), Estate Tax Regs., and thus valued the policies based upon the interpolated terminal reserve values.

*Estate of Wien* did not involve either the section 2013 credit or a deemed surviving spouse's usufruct interest; thus, it is not "squarely on point." See *Golsen v. Commissioner,* 54 T.C. 742, 757 (1970), affd. 445 F.2d 585 (10th Cir. 1971). Further, we note that in *Estate of Carter v. United States,* an unreported case (E.D. La. Dec. 13, 1989, 90-1 USTC par. 60,003), the District Court for the Eastern District of Louisiana acknowledged that the law in the Fifth

Circuit is unclear in this area. See *Miami Beach First National Bank v. United States,* 443 F.2d 116 (5th Cir. 1971).[6]

In *Estate of Carter,* the District Court held that in the context of a simultaneous death, the value of the deemed surviving spouse's usufruct for purposes of the section 2013 credit is to be determined by reference to the actuarial tables contained in the regulations.[7] We respectfully disagree with that decision; we agree with the holding in *Estate of Lion,* and thus believe the deemed surviving spouse is not entitled to the section 2013 credit in a simultaneous death situation. In our opinion, it is improper to ignore reality by placing (for tax purposes) a mythical value on the deemed surviving spouse's usufructuary interest. The deemed surviving spouse's enjoyment of the usufruct is too ephemeral to be accorded value—the usufruct terminated immediately upon its creation. Indeed, it is even hard to believe that in the context of a situation involving simultaneous deaths a usufruct created as a consequence of a presumption under State law is "property" as defined in section 2013(e). Accordingly, respondent's disallowance of the claimed section 2013 credit is sustained.

To reflect the foregoing and the concessions of the parties,

*Decision will be entered under Rule 155.*

---

[6]The principles of symmetry do not dictate that the credit under sec. 2013 be valued in the same manner as an ownership interest in an insurance policy. In *Estate of Lion v. Commissioner,* 438 F.2d 56, 60-62 (4th Cir. 1971), the Fourth Circuit distinguished these two lines of cases on the grounds of differences between secs. 20.2013-4 and 20.2031-8, Estate Tax Regs. Sec. 20.2013-4, said the Fourth Circuit, prescribes use of "recognized valuation principles" which leave room for departure from the employment of actuarial and mortality tables. By contrast, the Court of Appeals said, sec. 20.2031-8 provides flexibility only in the case of unusual contracts.

In a case involving the valuation of the decedent's ownership interest in an insurance policy on the life of another where the decedent and the insured died simultaneously (decided subsequently to *Estate of Lion),* the Fourth Circuit valued the decedent's ownership interest in the policy in the same manner as did the Fifth Circuit in *Estate of Wien.* See *Estate of Meltzer v. Commissioner,* 439 F.2d 798 (4th Cir. 1971). (In *Meltzer,* the Fourth Circuit restated its position that sec. 20.2031-8(a) "establishes a relatively inflexible valuation method".) Thus, the Fourth and Fifth Circuits (as do the Sixth and Ninth Circuits) agree that the decedent's ownership interest in the policy is to be valued based upon the policy's interpolated terminal reserve value.

[7]The District Court, while noting *Estate of Lion,* did not address the distinction enunciated by the Fourth Circuit between secs. 20.2013-4 and 20.2031-8, Estate Tax Regs. See *supra* note 6.

Reviewed by the Court.

NIMS, CHABOT, PARKER, SHIELDS, COHEN, CLAPP, SWIFT, GERBER, WRIGHT, WELLS, RUWE, and COLVIN, *JJ.,* agree with the majority.

KÖRNER and WHALEN, *JJ.,* concur in the result only.

---

PARR, *J.,* dissenting: The result reached by the majority may be correct as a matter of tax policy. Since the credit provided by section 2013 was designed "to prevent the diminution of an estate by the imposition of successive taxes on the same property within a brief period" (S. Rept. 1622, 83d Cong., 2d Sess. 122 (1954)), it is questionable whether a transferee of a terminable interest, such as a usufruct, should receive a credit even though that interest is not included in the transferee's gross estate. See *Holbrook v. United States,* 575 F.2d 1288, 1290 (9th Cir. 1978), for the apparent reasons the credit is available with respect to terminable interests. Thus, as a matter of policy, it may well be that Everard's estate should not receive the benefit of the section 2013 credit.

Nevertheless, the law is clear that the credit is available to a transferee, such as Everard's estate. See sec. 2013(e); sec. 20.2013-4(a) and -5(a), Estate Tax Regs. Our responsibility begins and ends with deciding whether Everard's estate satisfies the statutory and regulatory requirements for the credit. In the process, the Court should resist the temptation to create judicial exceptions in order to deny the section 2013 credit to Everard's estate at the expense of disregarding "recognized valuation principles."

The majority makes a distinction between the *valuation* of insurance for inclusion in an estate under section 2031 and *valuation* for computation of the credit under section 2013. I see no rational ground for this distinction. Value is value. Respondent has adopted an "actual knowledge" approach to valuation for purposes of applying section 2013, but steadfastly adheres to the mortality tables for applying sections 2037 and 2042(2). Rev. Rul. 80-80, 1980-1 C.B. 194. See sec. 20.2037-1(b)(3), Estate Tax Regs. The effect is heads, the government wins; tails, the taxpayer loses. Fairness to taxpayers is lost when respondent is permitted

to adhere to or depart from the use of the mortality tables as it suits him.

The majority assigns a zero value to the usufruct because Everard and Mary suffered simultaneous deaths. The majority is wrong because they ignore the presumption under Louisiana law that Everard survived Mary, and they deviate from recognized valuation principles in valuing the usufruct.

Section 20.2013-4(a) of the regulations clearly states that "the value of the interest is determined as of the date of the transferor's death on the basis of recognized valuation principles (see especially secs. 20.2031-7 and 20.2031-10)." If we accept the presumption that Everard survived Mary, which we must, Everard's death is irrelevant in determining the value of the property as of the instant of Mary's death. The usufruct should be valued on the basis of "recognized valuation principles" by simply adhering to respondent's *own regulation which expressly refers to the mortality tables at section 20.2031-7, Estate Tax Regs.*

The majority states that "it is improper to ignore reality by placing (for tax purposes) a mythical value on the deemed surviving spouse's usufructuary interest." But the value determined under the mortality tables is almost always "mythical," in the sense that the transferee's actual life rarely is the same as the assumed life provided by the tables. In this sense, the present case probably represents the epitome of "mythical" valuation. The reasoning of the majority is a slippery slope without bounds which invites controversy between taxpayers and respondent by departing from the certainty provided by the mortality tables. Unnecessary litigation is the last thing we ought to encourage.

Justice Holmes eloquently stated regarding the use of mortality tables:

The question is whether the amount * * * is to be determined by the event as it turned out, * * * or by mortality tables showing the probabilities as they stood on the day when the testator died. The first impression is that it is absurd to resort to statistical probabilities when you know the fact. But this is due to inaccurate thinking. * * * Like all values, as the word is used by the law, it depends largely on more or less certain prophecies of the future, and the value is no less real at that time if later the prophecy turns out false when it comes out true. * * *

Tempting as it is to correct uncertain probabilities by the now certain fact, we are of the opinion that it cannot be done, but that the value of the * * * life interest must be estimated by the mortality tables. * * * [*Ithaca Trust Co. v. United States,* 279 U.S. 151, 155 (1929). Citations omitted.]

See also *Estate of Lloyd v. United States,* 228 Ct. Cl. 10, 650 F.2d 1196 (1981). Similarly, in computing the section 2013 credit, the transferee's actual life span after the death of the transferor is always known. However, our objective is to determine "the value at which the property was included in the *transferor's* gross estate." See sec. 20.2013-4(a), Estate Tax Regs. (Emphasis added.) The Court should resist the temptation to look at Everard's actual life span and should instead look to the mortality tables to determine the value of the usufruct from the perspective of Mary's estate.

The Fifth Circuit addressed this matter, in the context of section 2031, in *Estate of Wien v. Commissioner,* 441 F.2d 32 (5th Cir. 1971). There the court focused on the impracticalities of administering a rule of valuation based upon determining the actual state of the insured's health, rather than using standard mortality tables:

We think that the principles of estate taxation preclude consideration of such facts as the actual state of the insured's health or peril in valuing the owner's property interest. Indeed it would bring virtual disaster upon the integrity of estate taxation if the value of an ownership interest fluctuated with the probable longevity of the insured. Any valuation method depending upon such an uncertain measure as the day-by-day health of an individual insured would be impossible to enforce accurately. *Old Kent Bank & Trust Co. v. United States,* 6 Cir. 1970, 430 F.2d 392. There are simply no actuarial computations which can be applied to an individual illness or accidental circumstance which will accurately predict the probability of death. For this reason the standard mortality tables on which the interpolated terminal reserve is based, rather than ad hoc medical prognosis, have always been the norm for estate tax valuations. Yet here because there is a common disaster involved both the Commissioner and the taxpayers suggest that we depart from the norm and value the policy on the basis of the individual insured's probability of death. We think considerations of this sort are as unmanageable when a common disaster is involved as they are in the ordinary case.

* * * * * * *

There are no actuarial figures to apply to this situation. Both the Commissioner and the taxpayers of necessity took a post mortem look

and determined that the insured did die, a fact which no buyer at the instant of the owner's death could have known. This method of valuation flies in the face of established precepts of appraisal based upon actuarial life expectancies at the instant of death as reflected by the interpolated terminal reserve. Before we would sanction such ad hominem determinations of valuation based on post mortem peeks at individual mortality, congressional authorization would be necessary.
[*Estate of Wien v. Commissioner,* 441 F.2d at 40.]

The above reasoning applies with equal force to the case before us.

The majority opinion is unfair to taxpayers, departs from recognized valuation principles, is an administrative nightmare, and will invite litigation which the use of mortality tables would avoid. Accordingly, I dissent.