115 T.C. No. 13


UNITED STATES TAX COURT


ESTATE OF JUDITH U. HARRISON, DECEASED, RICHARD J. TEJEDA,
EXECUTOR, AND ESTATE OF KENNETH R. HARRISON, DECEASED, RICHARD J.
TEJEDA, EXECUTOR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16018-98.                    Filed August 22, 2000.


        H and W boarded their private aircraft in July of
    1993 but never arrived at their destination.
    Subsequently, probate orders were entered presuming
    identical April 1, 1994, dates of death and finding it
    more probable than not that the airplane crashed en
    route.  The will of each spouse presumed survival by
    the other in circumstances where order of death was
    unknown and transferred a life estate to such surviving
    spouse.  For estate tax purposes, the transferred life
    estates were valued on the basis of actuarial tables,
    and each estate took a credit for tax on prior
    transfers pursuant to sec. 2013, I.R.C.  R disallowed
    these credits on the grounds that, under recognized
    valuation principles, the life estates were not to be
    valued by resort to actuarial tables but, rather, must
    be accorded no value.

        <u>Held</u>:  The reciprocal life estates at issue are not
    appropriately valued utilizing actuarial tables, must be

deemed without value for estate tax purposes, and, therefore, will not support allowance of credits for tax on prior transfers under sec. 2013, I.R.C.

<u>Michael Antin</u>, for petitioners.

<u>Donna F. Herbert</u>, for respondent.

OPINION

NIMS, <u>Judge</u>:  Respondent determined a deficiency in Federal estate tax with respect to the Estate of Judith U. Harrison, in the amount of $16,457, and a deficiency in Federal estate tax with respect to the Estate of Kenneth R. Harrison, in the amount of $16,457.  After concessions, the sole issue for decision is whether the estates of Judith U. Harrison and Kenneth R. Harrison are entitled to credits for tax on prior transfers pursuant to section 2013.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case was submitted fully stipulated under Rule 122. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.  Executor Richard J. Tejeda resided in California at the time the petition in this case was filed.

## Background

On or about July 25, 1993, Judith and Kenneth Harrison boarded their private aircraft in Roosevelt, Utah. The aircraft thereafter failed to arrive at its destination of Camarillo, California, and the Harrisons were never again seen or heard from.

On April 1, 1994, Orders for Probate were issued by the California Superior Court with respect to the estates of Mr. and Mrs. Harrison. An attachment to each order recited the court's findings and concluded as follows:

> It unfortunately appearing that it is more probable than not that the aircraft crashed en route and that JUDITH UTZ HARRISON [or KENNETH REED HARRISON] died as a result thereof, the orders hereinafter set forth should be made and entered.
>
> IT IS THEREFORE ORDERED that JUDITH UTZ HARRISON [or KENNETH REED HARRISON] is a missing person who is presumed dead under P.C. § 12401, that the date of JUDITH UTZ HARRISON'S [or KENNETH REED HARRISON'S] death is presumed to be the date hereof and that RICHARD J. TEJEDA is appointed to act as the Executor of the Will of JUDITH UTZ HARRISON [or KENNETH REED HARRISON], as set forth hereinabove.

Subsequently, on May 27, 1994, the California Department of Health Services entered a Court Order Delayed Registration of Death for each of the Harrisons. These documents indicated that the date of death was April 1, 1994, and the cause of death was "Unknown. Believed to be trauma suffered in crash of small aircraft."

The wills admitted to probate pursuant to the April 1994 orders each created a trust in which the surviving spouse was given a life estate. In addition, for purposes of effectuating these trusts, the will of each decedent provided that if the spouses died simultaneously, or under circumstances rendering it difficult or impossible to determine order of death, the other spouse would be conclusively presumed to have survived the decedent. Based on the foregoing provisions, estate tax returns were prepared which treated each spouse as having passed a life interest to the other and which claimed a section 2013 credit for tax on prior transfers with respect to the reciprocal interest so received. In calculating the amount of the credit, the life interests were valued utilizing the actuarial formulas and tables set forth by the Internal Revenue Service in Notice 89-24, 1989-1 C.B. 660, and Notice 89-60, 1989-1 C.B. 700. Respondent's disallowance of these credits is the subject of the instant controversy.

## Discussion

Broadly stated, the principal issue in this case is whether the estates are entitled to credits for tax on prior transfers pursuant to section 2013. As more narrowly framed by the contentions of the parties and the facts before us, resolution of this inquiry turns on whether the estates are entitled to value

the reciprocal life estates for purposes of the section 2013 credit on the basis of actuarial tables promulgated under section 7520.

## I. Contentions of the Parties

The estates contend that section 7520 makes use of actuarial tables mandatory, subject only to narrow exceptions not applicable here. Specifically, the estates maintain that judicial decisions and revenue rulings sanctioning departure from actuarial tables in cases of known simultaneous or clearly imminent deaths are not controlling here because there exist no facts to establish the circumstances surrounding the Harrisons' demise. The spouses were only presumed dead after an absence of more than 9 months. The estates therefore aver that the life estates at issue were properly valued on the basis of transitional rules set forth in section 20.7520-4(a), Estate Tax Regs., which state that executors may rely on the formulas and tables in Notice 89-24, 1989-1 C.B. 660, and Notice 89-60, 1989-1 C.B. 700, to value transferred interests if the valuation date is after April 30, 1989, and before June 10, 1994.

Conversely, respondent asserts that the Harrisons' life estates may not be valued through application of actuarial formulas and tables. Rather, it is respondent's position that this case presents a simultaneous death situation governed by case law and revenue rulings declaring valueless interests

transferred between victims of a common disaster or to an individual whose death is clearly imminent.  Hence, because the amount of the credit allowed under section 2013 is proportionate to the value of the transferred interest, respondent avers that the estates are entitled to no such credit.

On these facts, we conclude that the spouses' reciprocal life estates must be deemed to have a value of zero and, therefore, will not support allowance of a section 2013 credit.

II.  Statutory and Regulatory Provisions

Section 2013 provides a credit against estate tax liability where the decedent has received property in a transfer from a person who dies within a prescribed period before or after the decedent, which transfer is itself subject to estate tax in the transferor's estate.  The credit is intended "to prevent the diminution of an estate by the imposition of successive taxes on the same property within a brief period".  S. Rept. 1622, 83d Cong., 2d Sess. at 122 (1954).  As pertinent herein, the statute reads:

> SEC. 2013.  CREDIT FOR TAX ON PRIOR TRANSFERS.
>
> (a) General Rule.--The tax imposed by section 2001 shall be credited with all or a part of the amount of the Federal estate tax paid with respect to the transfer of property * * * to the decedent by or from a person (herein designated as a "transferor") who died within 10 years before, or within 2 years after, the decedent's death. * * *
>
> (b) Computation of Credit.-- * * * the credit provided by this section shall be an amount which bears

the same ratio to the estate tax paid * * * with respect to the estate of the transferor as the value of the property transferred bears to the taxable estate of the transferor (determined for purposes of the estate tax) * * *

Regulations promulgated under section 2013 specify that if the interest received by the decedent takes the form of a life estate, "the value of the interest is determined as of the date of the transferor's death on the basis of recognized valuation principles (see §§ 20.2031-7 (or, for certain prior periods, § 20.2031-7A) and 20.7520-1 through 20.7520-4)." Sec. 20.2013-4(a), Estate Tax Regs.

Section 7520, in turn, states in relevant part:

SEC. 7520. VALUATION TABLES.

    (a) General Rule.--For purposes of this title, the value of any annuity, any interest for life or a term of years, or any remainder or reversionary interest shall be determined--

        (1) under tables prescribed by the Secretary * * *

            *    *    *    *    *    *    *

    (b) Section Not to Apply for Certain Purposes.-- This section shall not apply for purposes of part I of subchapter D of chapter 1 [relating to deferred compensation] or any other provision specified in regulations.

In accordance with the authority granted in section 7520(b) above, the Commissioner issued section 20.7520-3, Estate Tax Regs. Paragraph (a) of the regulation begins "Section 7520 of the Internal Revenue Code does not apply for purposes of" and

then enumerates a series of limitations on the statute's
application.  The list concludes with "Any other sections of the
Internal Revenue Code to the extent provided by the Internal
Revenue Service in revenue rulings or revenue procedures."  Sec.
20.7520-3(a)(9), Estate Tax Regs.  Paragraph (a) is effective as
of May 1, 1989.  See sec. 20.7520-3(c), Estate Tax Regs.

At the time paragraph (a) was issued, Rev. Rul. 80-80, 1980-
1 C.B. 194, set forth the standard applied by the Commissioner
for determining whether departure from actuarial tables was
warranted.  The test therein provided:

> In view of recent case law, the resulting
> principle is as follows: the current actuarial tables
> in the regulations shall be applied if valuation of an
> individual's life interest is required for purposes of
> the federal estate or gift taxes unless the individual
> is known to have been afflicted, at the time of
> transfer, with an incurable physical condition that is
> in such an advanced stage that death is clearly
> imminent.  Death is not clearly imminent if there is a
> reasonable possibility of survival for more than a very
> brief period. * * * [Id.]

Rev. Rul. 80-80, 1980-1 C.B. 194, was subsequently obsoleted
by Rev. Rul. 96-3, 1996-1 C.B. 348, in conjunction with the
promulgation of section 20.7520-3(b), Estate Tax Regs.  This
paragraph (b) is effective with respect to estates of decedents
dying after December 13, 1995.  See sec. 20.7520-3(c), Estate Tax
Regs.  Among other things, paragraph (b) explicitly precludes use
of actuarial tables prescribed under section 7520 in instances
of:  (1) Terminal illness, where there is at least a 50-percent

probability that an individual with a known incurable illness will die within 1 year, and (2) deaths resulting from a common accident. See sec. 20.7520-3(b)(3)(i), (iii), Estate Tax Regs. Although this regulatory text is not applicable here, the preamble to T.D. 8630, 1996-1 C.B. 339, which adopted paragraph (b) as an amendment to the final regulations under section 7520, addressed the relationship of the new provisions to prior law as follows:

> One commentator suggested that the tables prescribed by the regulations must be used for valuing all interests transferred between April 30, 1989 (the effective date of section 7520) and December 13, 1995 (the effective date of the regulations). However, these regulations generally adopt principles established in case law and published IRS positions. * * * There is no indication that Congress intended to supersede this well-established case law and administrative ruling position when it enacted section 7520. Consequently, in the case of transfers prior to the effective date of these regulations, the question of whether a particular interest must be valued based on the tables will be resolved based on applicable case law and revenue rulings.

In addition, the regulations contain a transitional rule which reads: "If the valuation date is after April 30, 1989, and before June 10, 1994, an executor can rely on Notice 89-24, 1989-1 C.B. 660, or Notice 89-60, 1989-1 C.B. 700 * * *, in valuing the transferred interest." Sec. 20.7520-4(a), Estate Tax Regs. The referenced Notices set forth formulas and tables of actuarial factors intended "to provide guidance to taxpayers in determining the present value of * * * an interest for life * * * under

section 7520 of the Internal Revenue Code", Notice 89-24, 1989-1 C.B. 660, during the period between the enactment of section 7520 and the promulgation of final regulations and tables.

III.  Case Law

The existing case law as of April 1, 1994, although involving valuation dates prior to section 7520's enactment, specifically dealt with the issue of valuing interests transferred in simultaneous death situations for purposes of the section 2013 credit.  See Estate of Carter v. United States, 921 F.2d 63 (5th Cir. 1991); Estate of Lion v. Commissioner, 438 F.2d 56 (4th Cir. 1971), affg. 52 T.C. 601 (1969); Estate of Marks v. Commissioner, 94 T.C. 720 (1990); Old Kent Bank & Trust Co. v. United States, 292 F. Supp. 48 (W.D. Mich. 1968), revd. on other grounds 430 F.2d 392 (6th Cir. 1970).

As early as 1968, a U.S. District Court had ruled in Old Kent Bank & Trust Co. v. United States, supra at 53-55, that a life estate had no value for tax credit purposes where, despite a testamentary provision creating a presumption of survival, the decedents had apparently died together in a plane crash.  This Court then reached the same conclusion in Estate of Lion v. Commissioner, 52 T.C. at 606-607, and the Court of Appeals for the Fourth Circuit affirmed, Estate of Lion v. Commissioner, 438 F.2d at 61-62.  Each of these decisions reiterated that value for tax purposes is based upon the amount that a hypothetical willing

buyer with knowledge of all relevant facts would pay for the subject interest. See Estate of Lion v. Commissioner, 438 F.2d at 62; Estate of Lion v. Commissioner, 52 T.C. at 606; Old Kent Bank & Trust Co. v. United States, supra at 54. Since such a buyer would have been aware that the decedents were hurtling to the ground in a plane crash and would have recognized the probability of simultaneous deaths, the buyer would have paid nothing for the life estates at issue. See Estate of Lion v. Commissioner, 52 T.C. at 606; Old Kent Bank & Trust Co. v. United States, supra at 54. As stated by the Court of Appeals for the Fourth Circuit:

> Where at the time of the transferor's death it was unmistakable to one in possession of the facts that the transferee's life would be radically shorter than predicted in the actuarial tables, the value of a transferred life estate may be reduced accordingly for purposes of calculating the tax credit under § 2013. [Estate of Lion v. Commissioner, 438 F.2d at 62.]

Moreover, the Court of Appeals for the Fourth Circuit also noted that this result is consistent with the regulations, which explicitly sanction use of "'recognized valuation principles'" in the section 2013 context. Id. at 59-60, 62. The court concluded that use in section 20.2013-4, Estate Tax Regs., of the phrase beginning "see" to direct attention to actuarial tables, rather than an imperative phrase, served to "leave room for departure from strict application of the tables." Id. at 60.

More recently, this Court considered the issue in Estate of Marks v. Commissioner, supra at 727-729, and held, as before, that "the deemed surviving spouse is not entitled to the section 2013 credit in a simultaneous death situation." We indicated that the surviving spouse's interest was "too ephemeral to be accorded value". Id. at 729. Likewise, the Court of Appeals for the Fifth Circuit ruled in Estate of Carter v. United States, supra at 64, that an interest "passed between persons dying in a common disaster has no value and thus that the taxpayer is entitled to no credit." The court once again emphasized that "'recognized valuation principles'" in section 20.2013-4(a), Estate Tax Regs., "does not refer exclusively to the actuarial tables" and stated that "The paradigm 'unusual circumstance' in which mortality tables have not been employed is the simultaneous death of the transferor and transferee." Id. at 66 & n.6, 67.

## IV. Interpretation and Application

Given the foregoing authority, we first consider whether the principles developed in simultaneous death situations arising prior to the enactment of section 7520 in 1988, see Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, retain their validity under the current statutory and regulatory regime. If so, we must then decide whether the case at bar is to be treated as a simultaneous death situation.

The regulations issued under section 2013 have been amended to reflect section 7520's enactment, yet they continue to expressly authorize use of "recognized valuation principles" in valuing life estates. Sec. 20.2013-4(a), Estate Tax Regs. They similarly have retained the nonimperative term "see" to cite provisions dealing with actuarial tables as an example of such principles. Id. Furthermore, one of the provisions so cited is section 20.7520-3, Estate Tax Regs., which enumerates exceptions to use of actuarial tables. Section 20.7520-3, Estate Tax Regs., in turn, was promulgated under the explicit statutory grant of authority in section 7520(b), stating that the section shall not apply for purposes of "any other provision specified in regulations." Section 20.7520-3(a)(9), Estate Tax Regs., then likewise specifies that section 7520 shall not apply for purposes of "Any other sections of the Internal Revenue Code to the extent provided by the Internal Revenue Service in revenue rulings or revenue procedures." As effective in 1994, Rev. Rul. 80-80, 1980-1 C.B. 194, precluded use of valuation tables where death was clearly imminent. We observe that such would frequently be the case in the throes or aftermath of an airplane crash.

We also reject the estates' contentions that, in order for an exception to fall within the terms of section 7520(b) and section 20.7520-3(a)(9), Estate Tax Regs., the Commissioner is required in all instances to specifically designate in the

regulation, revenue ruling, or revenue procedure the particular section for purposes of which section 7520 does not apply. We do not believe that the relevant language must be read so narrowly, as it is possible to indicate that valuation tables are inapplicable for purposes of various Internal Revenue Code sections in a given set of circumstances by enunciating general rules, without exhaustively listing such sections by number. After all, legislative history regarding section 7520 states that "the provision does not apply to interests valued with respect to qualified plans or in other situations specified in Treasury regulations." H. Conf. Rept. 100-1104 (Vol. II), at 113 (1988), 1988-3 C.B. 603.

Moreover, administrative rulings and case law repeatedly rejecting taxpayers' attempts to apply actuarial tables in the context of common accidents and section 2013 credits existed at the time section 7520 was enacted. In light of the facially manifest intent in section 7520(b) that exceptions to the statute's application be permitted, we have no basis for concluding that Congress meant to overrule this administrative and judicial precedent. We are satisfied that the principles therein remain valid, and we find the estates' efforts to avoid their import through reliance on Estate of McLendon v.

<u>Commissioner</u>, 135 F.3d 1017 (5th Cir. 1998), revg. and remanding T.C. Memo. 1996-307, and section 20.7520-4, Estate Tax Regs., to be misplaced.

The decedent in <u>Estate of McLendon v. Commissioner</u>, <u>supra</u> at 1018-1020, after having been diagnosed with cancer, made a transfer of property in trust and received in return an annuity based on the actuarial tables for an individual of his age.  He died approximately 6 months later, and the Commissioner determined that the transferred property was to be included in his estate under section 2036(a) as a transfer not for adequate and full consideration.  See <u>id.</u> at 1020-1021.  The Court of Appeals for the Fifth Circuit held that the decedent was entitled to follow Rev. Rul. 80-80, 1980-1 C.B. 194, and concluded, as a factual matter, that his death was not clearly imminent at the time of the transfer.  See <u>id.</u> at 1023, 1025.  Use of actuarial tables was accordingly deemed proper.  See <u>id.</u>

The estates quote the following language from <u>Estate of McLendon v. Commissioner</u>, <u>supra</u> at 1025, to support their reliance on the transitional rules of section 20.7520-4(a), Estate Tax Regs.:  "Where the Commissioner has specifically approved a valuation methodology, like the actuarial tables, in his own revenue ruling, he will not be heard to fault a taxpayer for taking advantage of the tax minimization opportunities inherent therein."

As previously indicated, section 20.7520-4(a), Estate Tax Regs., states that, if the relevant valuation date is after April 30, 1989, and before June 10, 1994, executors may rely on Notice 89-24, 1989-1 C.B. 660, and Notice 89-60, 1989-1 C.B. 700, in valuing transferred interests. However, in attempting to analogize their use of these Notices to the reliance on Rev. Rul. 80-80, 1980-1 C.B. 194, addressed in Estate of McLendon v. Commissioner, supra, the estates have failed to recognize a critical distinction. Neither the regulation nor the referenced Notices purport to deal with the substantive question of whether actuarial tables are properly applied in the first instance. In fact, Notice 89-24, 1989-1 C.B. 660, recites only that "Generally, under section 7520, the value of an annuity, interest for life or for a term of years, or remainder or reversionary interest is determined under new tables that are to be prescribed by the Secretary." The regulation and Notices merely authorize executors to utilize a particular set of figures and formulas, different from those promulgated in the final regulations, in performing the actuarial computation. They do not provide any standards regarding whether use of actuarial tables is the appropriate valuation methodology. Other administrative and judicial rulings in place at the time the Notices were issued dealt with this question, and the estates are not entitled to ignore the principles established therein.

Furthermore, in comparing Estate of McLendon v. Commissioner, supra, to the instant section 2013 case, we note that the decision is not directly on point and makes no attempt to distinguish or overrule the earlier decision by the Court of Appeals for the Fifth Circuit in Estate of Carter v. United States, 921 F.2d 63 (5th Cir. 1991), which specifically analyzed availability of the section 2013 credit in the context of simultaneous deaths. Hence, Estate of McLendon v. Commissioner, supra, is inapposite and does not alter our conclusion that the administrative and judicial rulings addressing the relationship between common accidents and the section 2013 credit remain viable.

We therefore turn to the question of whether the matter before us is to be treated as a simultaneous death situation. The estates oppose any assumption that the Harrisons died simultaneously on the grounds that no facts establish they were victims of a common disaster. We, however, are satisfied that this case is sufficiently analogous to a simultaneous death scenario to render applicable principles related thereto.

As indicated above, an underlying rationale for deeming valueless life estates transferred upon simultaneous deaths is that a willing buyer with knowledge of all relevant facts would pay nothing for the interest. Here such a buyer would be aware either of an airplane crash and consequent near simultaneous

deaths or, at minimum, of some misfortune that left one or both spouses stranded in an area apparently so remote that not even a possible crash site was found for many months.  In both scenarios, we believe that a buyer so informed would have realized the high probability that any survival would be brief and, accordingly, would have declined to pay anything for the life estates at issue.

Moreover, the record before us reflects probate orders and death registrations presuming identical April 1, 1994, dates of death and finding it "more probable than not" that the Harrisons died as a result of an aircraft crash en route to their destination.  In absence of any evidence that might suggest a period of survival by either spouse, we find it incongruous to accept the presumed April 1 dates of death for all other estate tax purposes while at the same time rejecting the rationale underlying such presumptions.

We hold that the Harrisons' reciprocal life estates are not appropriately valued on the basis of actuarial tables but instead must be deemed without value.  Consequently, the estates are not entitled to credit for tax on prior transfers under section 2013.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.